## HACKETT *v.* OTTAWA.

1. *Semble*, that the borrowing of money by a city for the development of its natural resources for manufacturing purposes is within the provision of the Illinois Constitution of 1848, that corporate authorities may be empowered "to assess and collect taxes for corporate purposes," as interpreted by the Supreme Court of the State.
2. If a city issues bonds under its corporate seal, and in accordance with its charter, which empowers the council, with the sanction of a majority of voters attending an election for the purpose, to borrow money generally and to issue bonds therefor, and the bonds recite upon their face that they are issued in accordance with certain ordinances of the city, the titles of which, being quoted alone in the bonds, characterize the ordinances as providing for a loan for municipal purposes, the city is estopped, in a suit upon the bonds by an innocent purchaser for value, to set up that the ordinances appropriated the money to other purposes, and that the bonds were, therefore, void.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This action is upon certain bonds issued by the city of Ottawa, Ill., in the year 1869, and of which the testator of plaintiffs in error became the holder and owner, for value, before maturity. They are in the usual form of municipal bonds, and, besides pledging the faith of the city irrevocably for their payment, contain these recitals : —

"This is one of one hundred and twenty bonds of like amount and even-date herewith, numbered one to one hundred and twenty respectively, issued by the city of Ottawa, by virtue of the charter of said city ; wherein it is provided that the city council shall have power to borrow money on the credit of the city, and to issue bonds therefor, and pledge the revenue of the city for the payment thereof, provided that no sum or sums of money shall be borrowed at a greater interest than ten per cent per annum.   Art. 5, sect. 3.

"No money shall be borrowed by the city council until the ordinance passed therefor shall be submitted to and voted for by a majority of the voters of said city attending an election for that purpose. Art. 10, sect. 20.   And also in accordance with a certain ordinance passed by the city council of said city on the fifteenth day of June, A.D. 1869, entitled 'An ordinance to provide for a loan for municipal purposes,' which ordinance was ratified by a majority of all the

qualified voters of said city at an election holden on the twentieth day of July, A.D. 1869, and in conformity with an ordinance passed by the city council of said city on the thirtieth day of July, 1869, entitled 'An ordinance to carry into effect the ordinance of June 15, 1869, entitled an ordinance to provide for a loan for municipal purposes.'

"Witness the signatures of the mayor and clerk of said city, and the corporate seal thereof, this twentieth day of August, in the year of our Lord one thousand eight hundred and sixty-nine.

[SEAL]                          "HENRY A. SCHULER, *Mayor*.
                                "R. N. WATERMAN, *Clerk*."

The defendant below filed two special pleas. The first, after setting forth the ordinance of June 15, 1869, and also that of July 30, 1869, and what is alleged to be the substantial privileges granted to the Ottawa Manufacturing Company, by an act of the General Assemby of Feb. 15, 1851, and an act amendatory thereof, passed Feb. 16, 1865, avers that the first act and the amendatory act were the same franchises and powers referred to in the ordinance passed July 30, 1869, as having been granted for that purpose by the legislature of the State of Illinois, under which one Cushman was authorized and directed to expend the proceeds of the bonds aforesaid; that the manufacturing company was a private corporation, not connected with or controlled by the city, and that the bonds were issued and delivered to Cushman as a donation to him, or to the company, to aid in the prosecution of a private enterprise, and were not issued for any municipal purpose whatever; that their issue was without authority of law, and that they are void.

The second plea is in all respects like the first, except it avers that Cushman has failed to comply with his contract, as provided by the ordinance of July 30, 1869.

To each of these pleas a general demurrer was filed by the plaintiffs, which was overruled by the court below; and they having elected to stand by the demurrer, judgment was rendered for the city. The plaintiffs then sued out this writ of error.

The ordinances of the city and the acts of the General Assembly of Illinois referred to in the pleas are substantially set forth in the opinion of the court.

The Illinois Constitution of 1848 declares that "the corporate

authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes." Art. 9, sect. 5.

The charter of the city of Ottawa, granted in 1853, confers upon its council the power to establish hospitals; provide the city with water; open, widen, extend, and otherwise improve and repair streets and other public highways; establish, erect, and keep in repair bridges; erect market-houses; provide all needful public buildings for the use of the city; and grants various other municipal powers, the exercise of which necessarily involves the raising and disbursement of large sums of money. Laws of Ill., 1853, p. 296.

Among the powers expressly delegated to the council is the power " to appropriate money and provide for the payment of the debts and expenses of the city," and, with the sanction of a majority of voters attending at an election for that purpose, " to borrow money on the credit of the city, and to issue bonds therefor, and pledge the revenue of the city for the payment thereof."

*Mr. Frank W. Hackett* and *Mr. G. S. Eldredge* for the plaintiffs in error.

The language of the charter, " to borrow money on the credit of the city, and to issue bonds therefor, and pledge the revenue of the city for the payment thereof," conferred upon the corporate authorities power as ample to negotiate the bonds in this suit as if a legislative enactment had specially provided for their issue. *Gelpcke* v. *Dubuque*, 1 Wall. 220; *Meyer* v. *The City of Muscatine*, id. 384; *Rogers* v. *Burlington*, 3 id. 654; *Mitchell* v. *Burlington*, 4 id. 270.

A power to borrow money and issue bonds therefor includes the right to make a donation. *Chicago, &c. Railroad Co.* v. *Smith*, 62 Ill. 268; *Railroad Company* v. *County of Otoe*, 16 Wall. 667.

The issue of the bonds in suit was not in violation of sect. 5, art. 9, of the Constitution of Illinois of 1848. *Taylor* v. *Thompson*, 42 Ill. 11; *Burr* v. *City of Carbondale*, 76 id. 455; *Briscoe* v. *Allison*, 43 id. 291; *Johnson* v. *Campbell*, 49 id. 316; *Misner* v. *Bullard*, 43 id. 470; *Chicago, &c. Railroad Co.* v. *Smith, supra.*

The power conferred by that section gives the unquestionable right to the city to borrow money for any "corporate purpose," within the meaning of the Constitution.

Power to issue bonds for public purposes being lodged in the corporate authorities, and they having put upon the market negotiable securities which purport on their face to have been issued by a city that had charter authority to issue bonds for municipal purposes, the defendant is estopped from setting up that in point of fact the purpose was not municipal, when the bonds themselves recite that the loan is for municipal purposes, and they have come into the hands of a *bona fide* purchaser, who took them relying on such recitals, and without actual notice of the purpose for which they had been issued other than as disclosed on the face of the bonds. *Commissioners of Knox County* v. *Aspinwall et al.*, 21 How. 539; *Bissell et al.* v. *City of Jeffersonville*, 24 id. 287; *Van Hostrup* v. *Madison City*, 1 Wall. 291; *Mercer County* v. *Hackett*, id. 83; *Supervisors* v. *Schenck*, 5 id. 772; *Grand Chute* v. *Winegar*, 15 id. 355; *St. Joseph Township* v. *Rogers*, 16 id. 644; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *County of Moultrie* v. *Savings Bank*, id. 631; *Marcy* v. *Township of Oswego*, id. 637; *Humboldt Township* v. *Long et al.*, id. 642; *Commissioners, &c.* v. *January*, 94 id. 202; *Commissioners, &c.* v. *Bolles*, id. 104; *Cromwell* v. *County of Sac*, 96 id. 51; *San Antonio* v. *Mehaffy*, id. 312; *County of Warren* v. *Marcy*, 97 id. 96; *Mealey* v. *St. Clair County*, 3 Dill. 163; *Allen* v. *Cameron*, id. 175; *Wyatt* v. *City of Green Bay*, 1 Biss. 292.

Mr. *C. B. Lawrence*, contra.

In the absence of express legislative authority, the city could not issue the bonds in suit. *Town of South Ottawa* v. *Perkins*, 94 U. S. 260; *Township of Coloma* v. *Eaves*, 92 id. 484; *Pendleton County* v. *Amy*, 13 Wall. 297; *Kennicott* v. *The Supervisors*, 16 id. 452; *St. Joseph Township* v. *Rogers*, id. 644; *Bissell* v. *City of Kankukee*, 64 Ill. 251; *City of Galena* v. *Corwith*, 48 id. 423; *Trustees, &c.* v. *McConnel*, 12 id. 138; *Marshall County* v. *Cook*, 38 id. 44; *Schuyler County* v. *The People*, 25 id. 181; *Supervisors, &c.* v. *Clark*, 27 id. 305; *Rogers* v. *Burlington*, 3 Wall. 654; *Mitchell* v. *Burlington*, 4 id. 270.

Even if express authority had been given by legislative enactment to the city to issue the bonds as a donation to the Ottawa Manufacturing Company, such enactment would have been void under the Constitution of Illinois. *Loan Association* v. *Topeka*, 20 Wall. 655; *Harward* v. *St. Clair Drainage Co.*, 51 Ill. 133; *The People* v. *Salomon*, id. 48; *The People ex rel. McCagg* v. *The Mayor, &c. of Chicago*, id. 17; *The People* v. *Dupuyt*, 71 id. 651; *Johnson* v. *Campbell*, 49 id. 317; *Madison County* v. *The People*, 58 id. 463.

The bonds in suit were not issued for a corporate purpose. *Loan Association* v. *Topeka*, 20 Wall. 655; *Board of Supervisors* v. *Werder*, 64 Ill. 427; *Bissell* v. *City of Kankakee*, id. 251.

There is no question in this case of innocent purchasers of negotiable paper, for two reasons: first, the bonds were issued without statutory authority, and for a purpose for which such authority would have been unavailing; and, second, the bonds showed this defect on their face. *Township of East Oakland* v. *Skinner*, 94 U. S. 255; *Township of South Ottawa* v. *Perkins*, id. 260; *McClure* v. *Township of Oxford*, id. 429; *Marsh* v. *Fulton County*, 10 Wall. 676.

MR. JUSTICE HARLAN delivered the opinion of the court.

The bonds in suit upon their face import: 1st, That the faith of the city is irrevocably pledged for their payment. 2d, That they were issued in pursuance of the power which the council possessed to borrow money on the credit of the city and issue bonds therefor, and also in accordance with certain ordinances which provided for a loan for *municipal* purposes. The recitals of the bonds, in themselves, furnish no ground whatever to suppose that the council transcended its authority, or issued them for other than such purposes. They justify the opposite conclusion.

The city, however, claims that they were not issued for municipal purposes, but as a simple donation to a private corporation, formed for business ends solely, and in no wise connected with or under the control of the city, — all of which, it is further claimed, appears from the ordinances, whose date and title are given in the face of the bonds.

The ordinance of June 15, 1869, authorizes the mayor to

borrow, in the name, for the use, and upon the bonds of the city, the sum of $60,000, "to be expended in developing the natural advantages of the city for manufacturing purposes, and provides "that no application shall be made of the proceeds of the said bonds except for the purpose aforesaid, and in pursuance of an ordinance to be duly passed for that purpose by the city council, nor until the faithful application of the proceeds of such bonds to the purpose aforesaid shall be fully secured to the city." It further provides that a sufficient sum to pay interest on the loan should be annually provided by taxation, and set apart as a separate fund, to be applied solely to the payment of the interest on the bonds. That ordinance was ratified at an election held on the 20th of July, 1869, by a majority of all the legal voters of the city. The ordinance of July 30, 1869, was to carry into effect that of June 15, 1869. It directed the mayor to deliver the bonds to one Cushman, "to be used by him in developing the natural resources of the surroundings of the city, and that the said Cushman is authorized and directed to expend the sum in the improvement of the water-power upon the Illinois and Fox Rivers within the city and in the immediate vicinity thereof, under the franchises and powers which have been granted for that purpose, in the manner which, in his judgment, shall best secure the practical and permanent use of said water-power in the city and its immediate vicinity." It provided that Cushman should execute and deliver to the mayor his obligation that he would, without unreasonable delay, and by proper appliances, bring into use all the available water of the two rivers at Ottawa, as fast as it might be required for actual use, and as fast as it could be leased at fair and reasonable rates, — "the intent of this ordinance being to secure the improvement and development of said water-power in this city by appropriating the loan obtained under the ordinance aforesaid for that purpose, or *pro rata* so far as said water-power shall be made available for practical use." The ordinance of July 30, 1869, further provided that Cushman should bind himself to return the bonds, and save the city harmless from all loss if the work should not be constructed.

The city avers that the franchises and powers referred to in

the ordinance of July 30, 1869, were those granted to the Ottawa Manufacturing Company by an act approved Feb. 15, 1851, and by an act amendatory thereof, approved Feb. 16, 1865. The first act created certain persons therein named a corporation under the style of " The Ottawa Manufacturing Company," with authority to erect a dam across Fox River at a designated point, " for the purpose of creating a water-power," and to " use, lease, or otherwise dispose of the same, and construct such other works, buildings, and machinery as may be deemed necessary or proper to use such water-power to promote the interests and objects of the company." The second act conferred the additional right to build a dam across the Illinois River, and to construct races so as to introduce the water into the pool of the dam authorized to be erected across the Fox River. And for all the purposes indicated in the original and amendatory act the company was authorized to " take and use such portion of any highway, street, alley, or public ground as may be deemed necessary." But neither of the ordinances, it will be observed, designates, by name, that or any other private company. Nor is it distinctly alleged by the city, nor asserted in argument, that the testator of the plaintiffs understood the ordinances as referring to that company, or that he read them or had any actual knowledge of their terms at the time of his purchase. If the council intended the general public and, particularly, purchasers of its bonds to know that the proposed development of the natural advantages of the city for manufacturing purposes was to be made under the franchises and powers, or for the benefit, of that or any other private corporation, common fairness required that it should have so declared in the ordinances, and thereby distinctly informed all who should examine them, of what it now avows was its real purpose; namely, by a simple donation to give aid to a particular private corporation, established for business ends exclusively. If, by reason of the general reference, in the bonds, to the two ordinances of June and July, 1869, the purchaser is chargeable with notice of their provisions (a proposition to be hereafter examined), the utmost which the city, in view of the indefinite language of the ordinances, can claim is that he had notice that the bonds were issued for the

purpose of "developing the natural resources of the city for manufacturing purposes." Nothing more. This brings us to a question which counsel have discussed with some elaboration in their printed arguments.

We have seen that the charter of the city confers upon the council power to borrow money, upon the credit of the city, and to issue bonds therefor. No limitation is prescribed as to the amount which may be borrowed. Nor is any express restriction imposed as to the objects or purposes for which bonds may be issued. It is clear, therefore, that the council, having secured the assent of the requisite majority of voters, might rightfully borrow money upon bonds of the city for every purpose which could fairly be deemed municipal or corporate. But the specific contention of the city is that the development of the natural resources of the city for manufacturing purposes is not, upon principle or within the meaning of the Illinois Constitution of 1848, a corporate purpose. After a careful examination of the decisions of the Supreme Court of Illinois to which our attention has been called, we find this question by no means free from difficulty. The leading case, *Taylor* v. *Thompson* (42 Ill. 9), involved the question whether a tax levied, under the authority of an act of the legislature, passed in 1865, upon the property of a township, to pay bounties to persons who should thereafter enlist or be drafted into the army of the United States, was for a corporate purpose, within the meaning of the State Constitution. The person who complained of the tax, in that case, was a non-resident of the township, but he owned taxable property within its limits. The Supreme Court of Illinois, through Judge Lawrence, in an opinion of marked ability, sustained the validity of the tax, defining the phrase "corporate purposes" to mean "a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it." It is suggested, by learned counsel for the city, that that and similar decisions, rendered during the late civil war, were exceptional, and were made almost *ex necessitate*, because the courts were unwilling to cripple the power of the government to raise troops by denying to counties, cities, and towns the right to offer bounties when authorized by the legislature. An answer to this

suggestion is found in the fact that the same court reaffirmed the doctrine of *Taylor* v. *Thompson* in the cases of *Briscoe et al.* v. *Allison et al.*, 43 id. 293 ; *Misner* v. *Bullard*, id. 470 ; and *Johnson* v. *Campbell*, 49 id. 317. In the subsequent case of *Chicago, &c. Railroad Co.* v. *Smith* (62 id. 268), decided in 1871, the court, referring to the definition of corporate purpose as given in *Taylor* v. *Thompson*, announced their acceptance of it. In *People* v. *Dupuyt* (71 id. 651) the same definition was referred to without disapproval. The court, declaring that it had gone far enough in upholding that tax, said : " It may be difficult to determine with precision what is a corporate purpose, in the sense of the Constitution, but it is less difficult to determine what is not such a purpose. The true doctrine is, such purposes, and such only, as are germane to the objects of the welfare of the municipality, at least such as have a legitimate connection with these objects, and a manifest relation thereto." Again, in *Burr* v. *The City of Carbondale* (76 id. 455), the court sustained a tax imposed by the city in support of the Southern Illinois Normal University, to which the people of that city had voted a tax, and, referring to *Taylor* v. *Thompson*, said that a corporate purpose was there " held to mean a tax to be expended in a manner which should promote the general prosperity and welfare of the municipality which levied it. But in that case a vote of the people authorizing the tax was first to be taken, and the people in fact voted the tax. This was an important fact in determining that case. We thought it difficult to determine with precision what was a 'corporate purpose,' in the sense of the Constitution, but came to the conclusion that it was such a purpose, and such only, as might have a legitimate connection with objects and purposes promotive of the welfare of the municipality, and a manifest relation thereto."

In view of the course of decisions in Illinois, we should hesitate to declare that money borrowed by the City of Ottawa and expended in developing its natural resources for manufacturing purposes, was not, in the sense of the Illinois Constitution of 1848, as interpreted by the Supreme Court of that State, expended " to promote the general prosperity and welfare of the municipality."

But a direct decision of that question does not seem to be essential to the disposition of this case.   We content ourselves with stating the propositions which counsel have urged upon our consideration, and without expressing any settled opinion as to what are corporate purposes within the meaning of the Illinois constitution, we pass to another point, which, in our judgment, is fatal to the defence.   It is consistent with the pleas filed by the city that the testator of plaintiffs in error purchased the bonds before maturity for a valuable consideration, without any notice of want of authority in the city to issue them, and without any information as to the objects to which their proceeds were to be applied, beyond that furnished by the recited titles of the ordinances.   For all corporate purposes, as we have seen, the council, if so instructed by a majority of voters attending at an election for that purpose, had undoubted authority, under the charter of the city, to borrow money upon its credit and to issue bonds therefor.   The bonds in suit, by their recital of the titles of the ordinances under which they were issued, in effect, assured the purchaser that they were to be used for *municipal* purposes, with the previous sanction, duly given, of a majority of the legal voters of the city.   If he would have been bound, under some circumstances, to take notice, at his peril, of the provisions of the ordinances, he was relieved from any responsibility or duty in that regard by reason of the representation, upon the face of the bonds, that the ordinances under which they were issued were ordinances " providing for a loan for municipal purposes."   Such a representation by the constituted authorities of the city, under its corporate seal, would naturally avert suspicion of bad faith upon their part, and induce the purchaser to omit an examination of the ordinances themselves. It was, substantially, a declaration by the city, with the consent of a majority of its legal voters, that purchasers need not examine the ordinances, since their title indicated a loan for municipal purposes.   The city is therefore estopped, by its own representations, to say, as against a *bona fide* holder of the bonds, that they were not issued or used for municipal or corporate purposes.   It cannot now be heard, as against him, to dispute their validity.   Had the bonds, upon their face, made no reference whatever to the charter of the city, or recited

only those provisions which empowered the council to borrow money upon the credit of the city and to issue bonds therefor, the liability of the city to him could not be questioned. Much less can it be questioned, in view of the additional recital in the bonds, that they were issued in pursuance of an ordinance providing for a loan for municipal purposes; that is, for purposes authorized by its charter. *Supervisors* v. *Schenck*, 5 Wall. 772. It would be the grossest injustice, and in conflict with all the past utterances of this court, to permit the city, having power under some circumstances to issue negotiable securities, to escape liability upon the ground of the falsity of its own representations, made through official agents and under its corporate seal, as to the purposes with which these bonds were issued. Whether such representations were made inadvertently, or with the intention, by the use of inaccurate titles of ordinances, to avert inquiry as to the real object in issuing the bonds, and thereby facilitate their negotiation in the money markets of the country, in either case, the city, both upon principle and authority, is cut off from any such defence. What this court declared, through Mr. Justice Campbell, in *Zabriskie* v. *Cleveland, Columbus, & Cincinnati Railroad Co. et al.* (23 How. 381), as to a private corporation, and repeated, through Mr. Justice Clifford, in *Bissell et al.* v. *City of Jeffersonville* (24 id. 287), as to a municipal corporation, may be reiterated as peculiarly applicable to this case: " A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind ; and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced."

What we have said disposes of the second plea filed by the city. As to the third plea, it is scarcely necessary to say that it does not present a defence to the action. The questions raised by that plea have not been alluded to or discussed in the printed arguments of counsel.

The judgment will be reversed, with directions to sustain the demurrer to the second and third pleas, and for such further proceedings as may be consistent with this opinion ; and it is

*So ordered.*