CARY *v.* CITY OF OTTAWA.

(*Circuit Court, N. D. Illinois.* July 15, 1881.)

1. MUNICIPAL BONDS—ULTRA VIRES.

The city of Ottawa was empowered by its charter to issue bonds to an unlimited extent for corporate purposes, if such issue was sanctioned by a vote of the people. An ordinance was passed by the city council authorizing the mayor of the city to borrow money " to be expended in developing the natural advantages of the city for manufacturing purposes," and providing "that bonds of the city be issued therefor." This ordinance was submitted to the people at an election called for that purpose, and a majority of the votes were cast in its favor. The bonds were issued, and upon their becoming due the city refused to pay them. This action was brought by a holder of past-due bonds, to which the defence set up is, in substance, a denial of the power of the city to issue them, and an allegation that the plaintiff holds the same charged with notice of such want of power. *Held:* (1) The city, in issuing these bonds for the purpose above specified, was acting within its powers; (2) this being so, it is immaterial whether or not the plaintiff, a *bona fide* purchaser for value, knew for what purpose the bonds were to be issued.

*Judge Caton (J. M.)* and *Judge Eldredge, (G. S.,)* for plaintiff.

*Lawrence, Campbell & Lawrence, M. T. Maloney,* and *Saml. Richolson,* for defendant city of Ottawa.

BLODGETT, D. J.    This suit is brought upon certain bonds, for $500 each, issued by the defendant city, bearing date on the second day of August 1869, a portion of which were made payable in 5 years, a portion in 10 years, and a portion in 15 years from date, bearing interest at the rate of 10 per cent. per annum, payable annually, pursuant to the terms of interest warrants, or coupons, attached.    All these bonds were made payable to W. H. W. Cushman, "or to the bearer thereof," and each bond bears upon its face this recital:

This is one of 120 bonds of the like amount and even date herewith, 1 to 120, respectively, issued by the city of Ottawa, by virtue of the charter of said city, wherein it is provided that—

" The city council shall have power to borrow money on the credit of the city, and issue bonds therefor, and pledge the revenue of the city for the payment thereof, provided that no sum or sums of money shall be borrowed at a greater rate of interest than 10 per cent. per annum. [Article 5, § 3.] No money shall be borrowed by the city council until an ordinance therefor shall be submitted to and voted for by a majority of the voters of said city attending an election for that purpose." [Article 10, § 20.]

And also in accordance with a certain ordinance passed by the city council of said city, on the fifteenth day of June, A. D. 1869, entitled " An ordinance to provide for a loan for municipal purposes," which ordinance was ratified by a majority of the qualified voters of said city, at an election holden on the twentieth day of July, A. D. 1869, and in conformity with an ordinance passed by the city council of said city on the thirtieth day of July, 1869, entitled " An ordinance to carry into effect the ordinance of June 15, 1869, entitled 'An ordinance to provide for a loan for municipal purposes.' "

The defence set up by the numerous pleas filed in the case is in substance a denial of the power of the city of Ottawa to issue these bonds, and an allegation that the plaintiff holds the same charged with notice of such want of power; the substance of the allegations in the pleas being that these bonds were issued as a bonus to aid a private corporation—the Ottawa Manufacturing Company—in the improvement of the water-powers of the Illinois and Fox rivers, in the immediate vicinity of said city.    The question whether the aid extended by the city to the improvement of its water-power facilities is or is not "*a municipal purpose*," was before the supreme court of the United States in *Hackett* v. *Ottawa,* 99 U. S. 86, in which that court said:

" In view of the course of decisions in Illinois, we should hesitate to declare that money borrowed by the city of Ottawa and expended in developing its natural resources for manufacturing purposes, was not in the sense of the

Illinois constitution of 1848, as interpreted by the supreme court of that state, expended to promote the general prosperity and welfare of the municipality."

It must be added, however, that the court did not consider that question the controlling one in that case, but disposed of that case upon the question as to whether the recital of the bonds there above quoted did not protect a *bona fide* purchaser for value. That case was before the court upon demurrer to the pleas interposed by the city, which are substantially the same pleas on which issue is joined in this case.

The material facts, as they appear in evidence in this case, are these:

The charter of the city shows that the powers were fully delegated by it to the city council, which are set out in the recitals in the bonds. It also appears that on the fifteenth of June, 1869, the following ordinance was adopted by the common council of the city:

"An ordinance to provide for a loan for municipal purposes.

"Section 1. Be it ordained by the city council of the city of Ottawa, that the mayor of the city be and is hereby authorized to borrow in the name of the city, at a rate of interest not exceeding 10 per cent., for the use of said city, to be expended in developing the natural advantages of the city for manufacturing purposes, and that bonds of the city be issued therefor in sums of $500, with interest, payable annually; said bonds to be payable, one-third in 5 years, one-third in 10 years, and one-third in 15 years after the date hereof: *provided,* that no application shall be made of the proceeds of said bonds except for the purposes aforesaid, and in the pursuance of an ordinance to be passed for that purpose by the city council, nor until the faithful application of the proceeds of such bonds to the purpose aforesaid shall be fully secured to the city.

"Sec. 2. Be it ordained that a sufficient sum to pay the interest on said loan shall be annually provided by taxation and set apart as a separate fund, and to be applied to the payment of the interest on said bonds and for no other purpose.

"Sec. 3. This ordinance shall be submitted to the voters of the city, to be voted for or against at an election to be held for that purpose on the twentieth day of July, 1869. The manner of the determination shall be by depositing ballots, upon which shall be written or printed, 'For the loan ordinance,' or 'Against the loan ordinance.'"

It further appears that the election called for by the last section of the ordinance was duly held, and that a majority of 823 votes was cast in favor of the ordinance, which the common council, on a canvass of the votes, declared was a majority of all the voters of the city.

It further appears that two private corporations had been chartered or created by the legislature of the state of Illinois, with power to improve the water power of the Fox and Illinois rivers in the immediate vicinity of the city of Ottawa, and that, by an act of the legislature, approved February 19, 1867, certain persons had been appointed commissioners to subscribe for and in behalf of said city, to the capital stock of one of said companies, the sum of $100,000, and, for and in behalf of the city, to make, execute, and dispose of bonds to the amount so subscribed.

On the twenty-sixth day of July, 1869, after the adoption of the ordinance in question and its ratification by the voters, a committee was appointed by the common council to confer with W. H. W. Cushman, and negotiate with him in relation to the proposed water-power improvement on the Illinois and Fox rivers in the vicinity of the city. It is also fairly inferable, from the proceedings of the city council, that either before the adoption of the ordinance for the issue of the bonds, or during the discussions in relation thereto, a proposition had in some form been made that the proposed bonds should be placed in the hands of W. H. W. Cushman to be in some way used by him in making the proposed improvements, Mr. Cushman being at that time a wealthy and influential citizen of Ottawa.

On the twenty-seventh of July this committee reported to a regular meeting of the common council that they had a full and free conference with Mr. Cushman, and on the subject—

" Understand him to be prepared, in consideration of the proposed bonus, to enter into an agreement or arrangement with the city substantially as follows: He will agree in writing to erect as soon as practical, by the use of all reasonable energy, a good, substantial, and safe dam to bring into use all the available water-power of the Illinois river at Ottawa, and to construct sufficient head-races and tail-races to make all the water-power created by said dam available for use as rapidly as called for; also to erect the proposed dam across Fox river to unite the waters of the Fox with those of the Illinois, as soon as such improvement may be found necessary to bring into use all the available water of both rivers at Ottawa."

And the committee recommended that an ordinance be passed directing that the bonds for $60,000 recently authorized to be issued be placed in the hands of Mr. Cushman, to be used by him for the benefit of the city in developing the natural advantages of the city for manufacturing purposes; and at a special meeting of the common council held on the twenty-ninth of July an ordinance was adopted directing the mayor of the city to issue the bonds contemplated by the ordinance first mentioned,—

"And that he deliver the same to William H. W. Cushman, to be used by him in developing the natural resources of the surroundings of the city, and that said Cushman is authorized and directed to expend the same in the improvement of the water-power upon the Illinois and Fox rivers within the city and in the immediate vicinity thereof, under the franchises and powers which have been granted for that purpose, in the manner which in his judgment shall best secure the practical and permanent use of said water-power in the city and its immediate vicinity : *provided,* that said Cushman shall execute and deliver to the mayor an agreement from him to the city of Ottawa that he will, without unreasonable or unnecessary delay, cause a good, substantial, and sufficient dam to be constructed across the Illinois river above the city, to bring into use all the available water-power of said city at Ottawa, and will construct sufficient head and tail races to make such water-power available; said races to be constructed and continued to the Fox river below the aqueduct and above the island in Fox river, as fast as the same may be required for actual use, and as fast as said water-power can be leased at fair and reasonable rates, and be brought into actual operation, and that he will also erect a good, substantial, and safe dam across Fox river, so as to make available the water-powers of both rivers at Ottawa, as soon as the additional water-power created by such dam across the Illinois river can be brought into actual use by being leased at reasonable and fair rates : *and provided, also,* that said Cushman shall bind himself that, if said work is not constructed as aforesaid, he will return said bonds to the city, or the value of the same, and save it harmless from all loss on account of the same, or on account of interest accruing thereon, and in case said work shall not be completed by said Cushman, then to return the *pro rata* share of said bonds in the proportion that the cost of the work constructed shall bear to the part of the work not constructed : *provided,* that at least one of the dams above mentioned, with the races necessary to make the water-power thereby created available for practical use, shall be completed, or the whole of said bonds shall be returned to the city by said Cushman,—the intent of this ordinance being to secure the improvement and developing of said water-power in this city by appropriating the loan under the ordinance aforesaid for that purpose, or *pro rata* as far as said water-power shall be made available for practical use."

On the second of August, 1869, a contract in writing was entered into between the said city and the said William H. W. Cushman, in which he admitted that he had received from the city of Ottawa the bonds mentioned in the foregoing ordinances, and agreed that he would, without unreasonable or unnecessary delay, construct the dams and races contemplated in the last-mentioned ordinance, and that in case he should fail to construct the dam across the Fox river, and the races, so as to make the water-power thereby created available for practical use, he would return the bonds, or the value thereof, to the city, and save and keep harmless the city from all loss on account of the same, or on account of the interest accruing thereon.

It further appears that Cushman was a member of the Ottawa

Manufacturing Company, and one of its directors, and that on or about the eleventh of March, 1871, he delivered to said company the said entire issue of $60,000 in bonds, and that the said Ottawa Manufacturing Company, on the eighth of April, sold to Caldwell, Clark & Co. $10,000 of said bonds, and on the sixth of June, 1871, they sold to Lester H. Eames $38,000 of said bonds; that, at the time said bonds came into the hands of the Ottawa Manufacturing Company, the coupons for the first year's interest had been taken up by the city and some short-time bonds given to Cushman in settlement thereof, and that the manufacturing company sold the bonds to Eames for their par value, with some slight discount upon the second year's interest, which was then running. Eames subsequently purchased $9,000 of the bonds sold to Caldwell, Clark & Co., making in all $47,000 worth of bonds purchased and paid for by him, and after such purchase the city paid two year's interest on said bonds.

At the time the ordinance authorizing the issue of these bonds was adopted by the common council and voted upon by the electors of the city, and at the time the bonds were issued and the contract made with Cushman, Eames was a citizen and resident of Ottawa, engaged in the banking business there, and a subscriber to the corporation newspaper, which contained the proceedings of the common council relating to the issue and disposition of these bonds.

It also appears by the proof that the Ottawa Manufacturing Company applied the proceeds of these bonds to the construction of the dam across both the Fox and Illinois rivers, and the work was so far completed as to develop some water-power for manufacturing purposes during the season of 1871.

It also appears that Eames continued to hold these bonds until a short time before the commencement of this suit, when he transferred them to the plaintiff. It is contended that Eames is chargeable with full notice of the fact that these bonds were issued as a bonus to the parties who were engaged in the improvement of the water-power aforesaid, and knew that the city had no authority to aid said enterprise by such issue of bonds, and the question is, it being clear from the proof that Eames was a purchaser for value, is the fact that he did know, or may be presumed to have known, that the only purposes for which the city issued these bonds was to aid in this contemplated water-power improvement, any defence to his right to maintain the action thereon?

This question was so fully discussed in *Hackett v. Ottawa*, and the Illinois authorities as to what is a corporate purpose so carefully con-

sidered in that case, that I cannot but consider the intimations from that court as clearly indicating that they considered the purpose for which these bonds were issued as a corporate purpose within the meaning of the Illinois case; and if it was a corporate purpose, then there can be no doubt that a *bona fide* purchaser of such bonds must have a right of action upon them. It is evident, I think, that the common council preferred to deal with Cushman as an individual, and accept the guaranty of his personal contract for the faithful application of the bonds for the use for which they were designed, than to deal with a corporation; and the mere fact that Cushman chose to execute his contract through the agency of a corporation which had been created for the purpose of making this contemplated improvement, cannot affect the validity of the bonds in the hands of any one who obtained them for value from or through Cushman. Nor does it seem to me that, even if Cushman had wholly violated his contract, would such violation furnish any defence to the city against a *bona fide* purchaser of the bonds for value from Cushman. What the understanding between Cushman and the Ottawa Manufacturing Company was, the testimony does not disclose; but it does appear satisfactorily that Cushman turned the bonds over to the manufacturing company, and that they expended the proceeds thereof for the purpose for which they were designed by the common council; and the money which was used in the enterprise was obtained by means of these bonds from Eames.

The supreme court, in *Hackett* v. *Ottawa*, held that a purchaser for value need not look beyond the recitals in the bond. But if these bonds were issued for a corporate purpose, suppose he did look beyond the recitals in the bond and learned or knew that the corporate purpose that was intended was the one actually indicated by the ordinances of the city and the contract with Cushman, still that furnishes no reason why the purchaser should not be protected.

Much testimony was put into the case on the part of the defendant in regard to certain proceedings on the part of the common council at an earlier date than that in which these bonds had their inception, looking to a subscription of $100,000 by the commissioners named in the act of February 19, 1867. I do not see how that testimony can affect the validity of these bonds. Either these bonds are good by reason of the recitals on their face and the facts which were within the knowledge of Eames at the time he purchased them, or they are not, and their validity does not, in my opinion, depend in any degree upon the abortive attempts at a previous issue, which seems to have

been wholly abandoned before the issue of the bonds in question was made.

It seems to me that the clear intimation, in *Hackett* v. *Ottawa* are that the improvement of the water-power in Ottawa and its vicinity was a corporate purpose within the meaning of the constitution of 1848, and that, conceding that Eames was fully advised of the purpose for which these bonds were issued, he has the right to maintain an action against them.

Proof was introduced showing that the plaintiff, Cary, derived title to these bonds from Eames, and that he was a member of the common council of Ottawa in 1872 and 1873, and that he voted with the other members of the common council to repudiate these bonds.

The law is well settled, I think, that if these bonds passed out of the defendant to a *bona fide* holder for value before due, a subsequent purchaser of the bonds, even with knowledge of any taint upon them, is to be protected.

It appears from the proof in this case that the contemplated issue of these bonds was a matter of general notoriety. It was discussed at public meetings, voted upon at a public election, the action of the common council was of the most public character, their various ordinances and proceedings in regard to the disposition of the bonds were published in the corporation newspaper and commented upon by the press of the city generally, and it cannot but be assumed that the citizens of the city, the tax payers, and those interested in the subject, must have known for some time before the bonds were issued, not only that they were to be issued, but the use to be made of them; and the question is, is it right that a city which now represents the same citizens who stood by and acquiesced in the issue of these bonds shall be allowed to repudiate them in the hands of one of their own citizens, even, who has paid full value, and whose money has been, so far as we know, faithfully expended for the purpose which the bonds were designed to further? Here was, at least, a full claim of power to issue them.

This municipality was by its charter empowered to issue bonds to an unlimited extent for corporate purposes, if sanctioned by a vote of the people. The city authorities treated water-power improvement as a public purpose; the citizens not only acquiesced in it, but publicly voted for it by a large majority. The case appears to me to resolve itself solely into a question of municipal power, and in the light of *Taylor* v. *Thompson* and the subsequent cases upon the same question in this state, and the construction given to the powers

of this city in the light of these cases by the supreme court of the United States, I cannot say there was a lack of power in the city to make this issue.

The finding of the court will, therefore, be the issues for the plaintiff.