CARTER *v.* TOWN OF OTTAWA.

*(Circuit Court, N. D. Illinois.   July 22, 1885.)*

MUNICIPAL BONDS — BONA FIDE PURCHASER — KNOWLEDGE OF ATTORNEY AS TO INVALIDITY.
　　M. and her agent having acquired certain town bonds, with knowledge of facts which made them invalid, placed them in the hands of her attorney, MacV., who sold them to C.   It appeared that at the time of the purchase by C., MacV. was his legal adviser, and was one of the attorneys retained by him in the prosecution of the suit on the bonds against the town.   *Held*, that C. was not a *bona fide* purchaser of the bonds, and could not recover.

At Law.
*Chas. E. Towne* and *Wayne MacVeagh*, for plaintiff.
*Mayo & Widmer*, for defendant.

GRESHAM, J.    The plaintiff brought this action on the twelfth day of August, 1884, as the holder and owner of 40 bonds of $500 each, issued by the defendant on the second day of August, 1869, payable to bearer 15 years after date.    The defense is that the bonds were issued for an unauthorized purpose, and that the plaintiff is not an innocent holder for value.    The supreme court of the United States, at the October term, 1882, in *Ottawa* v. *Carey*, 108 U. S. 110, S. C. 2 Sup. Ct. Rep. 361, held that a number of bonds of the same issue were void in the hands of a holder who acquired them with knowledge of the circumstances under, and the purposes for, which they were

issued, and at the October term, 1878, in *Hackett* v. *Ottawa*, 99 U. S. 86, that court held that bonds of the same issue were valid in the hand of an innocent purchaser for value.

The bonds in this suit belonged to Mrs. Louise Mather when the above decisions were rendered, and she and her agent, L. H. Eames, both citizens of the city of Ottawa, knew, at and before the alleged sale to the plaintiff, the grounds upon which the municipality resisted payment.  Thus advised, and knowing that payment could not be enforced by her, Mrs. Mather, through her agent, placed the bonds in the hands of Wayne MacVeagh, an attorney at Philadelphia, for collection.  The plaintiff was a successful business man of large means, engaged in mining and selling coal, and in manufacturing pig-iron, and MacVeagh had been his attorney and general legal adviser since 1877 or 1878.  The plaintiff had inquired of MacVeagh, shortly before the latter's employment by Mrs. Mather, if he knew of opportunities for investment.  The plaintiff had previously made investments through MacVeagh, and the latter was still the plaintiff's legal adviser.  Under these circumstances, MacVeagh telegraphed the plaintiff at his country place, calling him to Philadelphia, where they met, and it is claimed the plaintiff bought the bonds in suit.  The plaintiff testified that at this interview MacVeagh informed him he had the bonds for sale; that they had been issued by the city of Ottawa; that the municipality was able to pay them; that they were good beyond all question, and would certainly be paid at maturity; that they contained the proper municipal clauses; that, without seeing or knowing anything more about them, he made the purchase, relying upon MacVeagh's advice, and gave the latter his checks for $20,000, with the understanding on his (the plaintiff's) part that the bonds were to be purchased by MacVeagh for him; that they certainly were so purchased; that he did not ask MacVeagh whether their validity had been disputed; and that he had no agreement with any one that his money should be returned if he failed to collect the bonds.

Eames testified that he went to Philadelphia and placed the bonds in MacVeagh's hands for collection; that he did this on the advice of Franklin MacVeagh, of Chicago, who is related by marriage to Mrs. Mather, and who is Wayne MacVeagh's brother; that he was Mrs. Mather's agent in the management of her estate, and that neither Wayne MacVeagh nor any one else had paid to him or to his principal, with his knowledge, any money arising from the sale of the bonds.

Wayne MacVeagh testified that Eames advised with him as to the best method of securing the money due upon the bonds, and employed him to bring suit or take any other course that he might think best to collect the money; that in negotiating the sale to the plaintiff he did not act as the latter's agent or attorney; that he told the plaintiff he had the bonds for sale; that he had made inquiries and had satisfied himself the municipality was abundantly able to pay its debts,

and that the bonds would be paid at maturity; that they showed upon their face they had been issued for a municipal purpose; that he sent for the plaintiff because he was an investor; that there was no occasion for acting as counsel for the plaintiff; that he still retained the money he got from the sale of the bonds; and that he was one of the plaintiff's counsel in prosecuting this suit.

Mrs. Mather acquired the bonds, with knowledge of the facts which made them invalid. Her agent and her attorney, Mr. MacVeagh, both knew that collection could not be enforced in her favor; and the plaintiff is therefore equally unfortunate if his purchase was made upon Mr. MacVeagh's advice as his counsel or agent, as in that case knowledge of the counsel or agent was the plaintiff's knowledge. If the plaintiff's testimony is to be credited, he certainly understood the purchase was so made. Was he justified by the facts in assuming, in the interview with Mr. MacVeagh, that the relation of attorney and client existed between them, and that Mr. MacVeagh was advising him as his counsel as to the character of the securities? Mr. MacVeagh had been the plaintiff's attorney and general legal adviser for five or six years, during which time he had represented the plaintiff in litigation in the courts, and had given him legal advice, as occasion required, in connection with his large business interests. This relation still existed, and the confidence naturally incident to it remained unshaken. The plaintiff was not even cautioned against relying, at this time, upon Mr. MacVeagh as his counsel in making the purchase. If the plaintiff had been so cautioned, it is probable he would have gone to some other attorney for advice. It cannot be presumed that the plaintiff, a citizen of Philadelphia, was willing to invest $20,000 in bonds, issued by a municipality in Illinois, without the opinion of an attorney that they were valid.

Mr. MacVeagh advised the plaintiff, in effect, if he did not do so in terms, to buy the bonds; and the plaintiff relied upon this as the advice of his counsel. It was natural and reasonable that he should do so. It is significant in this connection that in his argument of the motion for a new trial Mr. MacVeagh frankly stated that, while talking to the plaintiff about the bonds, he had in his mind the importance of keeping the latter ignorant of the facts which would prevent a recovery in his favor as an innocent holder for value. It is true, Mr. MacVeagh testified as a witness that he did not act as the plaintiff's attorney or agent in this instance, but that was an expression of his opinion rather than the statement of a fact. The evidence, fairly considered, shows that whatever interest the plaintiff has in the bonds he acquired upon the advice of Mr. MacVeagh as his attorney, or through him as his agent; and that, notwithstanding Mr. MacVeagh's secret intention to the contrary, he was in law and fact such attorney and agent.

A material part of the evidence remains to be considered. Mr. MacVeagh collected the money two years ago on the checks which

the plaintiff gave him, and still retains it in his hands. There is no evidence that Mrs. Mather ever demanded this money, or that it is withheld without her consent. Mr. MacVeagh is still the plaintiff's general legal adviser, and one of his counsel in this case. Why should the money be permitted to remain in his hands unless there is an understanding, tacit perhaps, that it shall be returned to the plaintiff if he is unsuccessful in this suit? That it is held for this purpose there can scarcely be a doubt. Any other theory would make Mr. MacVeagh unmindful of his duty to Mrs. Mather as her attorney.

The foregoing are my reasons in brief for holding that the plaintiff is not an innocent holder of the bonds for value.

The motion for a new trial is overruled.