FAIRFIELD v. RURAL INDEPENDENT SCHOOL DIST. OF ALLISON et al.

(Circuit Court of Appeals, Eighth Circuit. July 14, 1902.)

No. 1,687.

1. **MUNICIPAL BONDS—NOTICE OF CONTENTS OF ORDINANCE RECITED THEREIN NOT CHARGEABLE TO INNOCENT PURCHASER.**

An innocent purchaser of municipal bonds, which recite that they are issued in pursuance of an act of the legislature, which authorizes their issue for a lawful purpose, and which also recite that they are issued in pursuance of an ordinance or resolution of a given date or title, which, if read, would disclose the fact that they are issued for an unlawful purpose, is not chargeable with notice of the terms or contents of the ordinance or resolution.

2. **SAME—ESTOPPEL BY RECITALS—NOTICE OF RESOLUTION.**

A recital in school district bonds, that they are issued in pursuance of a lawful refunding act and of a resolution of a proper board, designated by its date, imports that they were issued in pursuance of a lawful resolution and of just and proper action of the board; and it estops the district, as against an innocent purchaser, from defeating the bonds, on the ground that they were issued for a fictitious, invalid, or unconstitutional claim, although that fact was disclosed by the resolution, the date of which was recited in the bonds.

3. **SAME—RECITAL ESTOPS FROM DENYING VALIDITY OF DEBT FUNDED.**

A recital in the bonds of a school district, that they are issued in pursuance of a lawful refunding act, which authorizes the issue of bonds to fund the debt of the district, conclusively estops the quasi municipality from defeating the bonds in the hands of an innocent purchaser, on the ground that it had no fundable debt, or that the debt refunded was unconstitutional, fictitious, or invalid.

4. **SAME—FUNDING BONDS CREATE NO DEBT.**

Funding bonds neither create nor increase the indebtedness of a municipality, but merely change its form.

5. **SAME—CERTIFICATE OF ISSUE IN PURSUANCE OF LEGISLATIVE AUTHORITY.**

The certificate upon the face of municipal bonds, that they have been issued in pursuance of legislative authority, for the purpose of funding the indebtedness of the municipality, is a declaration that they have been issued for the purpose of funding a valid debt in the method prescribed by law, and that they neither create nor increase any indebted-

---

¶ 1. Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.

ness of the municipality; and, as against a bona fide purchaser, they estop the municipality from denying this declaration.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Northern District of Iowa.

This is an action upon three negotiable bonds of the independent school district of Riverside, which aggregate $2,000, and upon certain coupons attached to them. The case was tried by the circuit court, and a special finding of facts has been made. The constitution of the state of Iowa limited the lawful indebtedness of this district to 5 per cent. of its assessed valuation. Article 11, § 3. The legislature of that state, by chapter 132, Acts 18th Gen. Assem., empowered the board of directors of any independent school district having a bonded indebtedness to issue negotiable bonds of the district for the purpose of funding that indebtedness. On June 21, 1881, the limit of the indebtedness of the district was less than $3,500, and during all the time from 1873 to 1882 it had outstanding evidences of indebtedness in judgments and bonds which amounted in the aggregate to many times the amount of its constitutional indebtedness. On June 21, 1881, the board of directors of this district passed and recorded in the minutes of their meetings a resolution to the effect that the district would issue to E. E. Carpenter forty of its bonds, which amounted in the aggregate to $23,700, in exchange for old bonds which had been issued by the district in 1873 and in subsequent years, and which were then held by Carpenter. The board of directors issued and exchanged the bonds accordingly. The bonds in suit are three of these forty bonds. The plaintiff purchased them for value, without notice of any defense to them, except that imparted by the constitution and laws of the state of Iowa. The bonds contain this recital: "This bond is executed and issued by the board of directors of said independent school district in pursuance of and in accordance with chapter 132, Acts of the Eighteenth General Assembly of Iowa, and in conformity with a resolution of said board of directors, passed in accordance with said chapter 132, at a meeting thereof held the twenty-first day of June, 1881. This bond is issued in strict compliance with the laws of the state of Iowa, and is within the constitutional limit of indebtedness fixed by sec. three (3), art. 11 (eleven), of the state constitution." Upon this state of facts, which was found to exist by the court, the district insisted that the bonds were void, because their issue created an indebtedness of the district in excess of the constitutional limitation, and because the bonds for which they were exchanged were void for the same reason and for other reasons. The plaintiff insisted, on the other hand, that the defendant was estopped by the recitals in the bonds from availing itself of these defenses. The circuit court held that the recital in the bonds of the date of the resolution of the board of directors under which they were issued charged the plaintiff with knowledge of the terms of that resolution and of the fact recited therein, that her bonds were three of forty bonds which were issued at the same time, and which aggregated $23,700,—an amount more than six times the largest amount of indebtedness which the district could have lawfully incurred. Upon this ground it rendered a judgment for the defendant. 111 Fed. 108, 453.

J. M. Parsons (S. D. Riniker, on the brief), for plaintiff in error.

E. C. Roach (O. J. Taylor, on the brief), for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

These are refunding bonds. The judgments against the school district and its outstanding bonds aggregated many times the constitutional limit of its indebtedness when these bonds were issued. A por-

tion of the debt evidenced by those judgments and bonds must have been within the constitutional limit and valid. The bonds in suit were exchanged for some of the outstanding bonds. If the bonds for which they were exchanged evidenced a valid indebtedness of the district, the issue of these bonds neither created nor increased its debt. Their issue merely changed the form of its debt, and extended the time for its payment. Not only this, but if, as against the plaintiff, an innocent purchaser of these bonds, the district was estopped by the recitals therein from denying that they were exchanged for old bonds which evidenced a lawful debt of the district, then it is by the same mark estopped from denying that the issue of these bonds neither created nor increased the debt of the district; and the fact that its debt was far beyond its constitutional limit when they were issued, and the recital in the bonds that they are within that limit,—concerning which there has been much discussion in the arguments and briefs of counsel, —both become immaterial, and require no further consideration. Can the district now defeat the bonds on the ground that the debt which they funded was beyond the constitutional limit, fictitious, or invalid? Counsel for the plaintiff contend that the district is estopped by the recital in the bonds from denying that the debt which they funded was a lawful indebtedness of the quasi municipality. Opposing counsel insist that no estoppel arose in favor of the plaintiff, because the law and the recital in the bonds that they were issued "in conformity with a resolution of said board of directors, passed in accordance with said chapter 132, at a meeting thereof held the 21st day of June, 1881," made that resolution a part of the bonds, and charged the plaintiff with knowledge of its contents, and of the fact which it recited,—that her bonds were three of a lot of forty, aggregating $23,700,—an amount more than six times the constitutional debt of the district, which were issued and exchanged at the same time for outstanding bonds held by one Carpenter, which amounted to yet more than $23,700. The primary question in the case, therefore, becomes: Is a bona fide purchaser of municipal bonds, which recite that they were issued in pursuance of a statute authorizing the municipality to issue them for a lawful purpose, and in conformity with an ordinance or a resolution of a specified date, which discloses the fact that they were issued for an unlawful purpose, charged with notice of the terms and contents of the ordinance or resolution? The question is not new, and the answer to it is to be found in the opinions of the federal courts. In the earlier decisions of this court, and in at least one of those of the circuit court of appeals of the Seventh circuit, this question was answered in the affirmative. National Bank of Commerce v. Town of Granada, 54 Fed. 100, 4 C. C. A. 212; Hinkley v. City of Arkansas City, 69 Fed. 768, 773, 16 C. C. A. 395, 400; Post v. Pulaski Co., 1 C. C. A. 405, 49 Fed. 628. But after the decision of the supreme court in Town of Evansville v. Dennett, 161 U. S. 434, 439, 443, 16 Sup. Ct. 613, 40 L. Ed. 760, and after a careful reconsideration of the question, in view of the opinion in that case, those earlier cases were overruled, and the proposition was announced to which this court has since adhered. It is that the recital in municipal bonds that they were issued in accordance with the provisions of the enabling statute imports that they were sent

forth in pursuance of a lawful and proper resolution or ordinance, and of just and proper action by the governing board of the municipality. It relieves the innocent purchaser of all inquiry, notice, and knowledge of the actual action and record of the board or council, and estops the municipality from denying that proper action was taken and that a lawful resolution or ordinance was passed. Board of Com'rs of Haskell Co. v. National Life Ins. Co., 32 C. C. A. 591, 594, 90 Fed. 228, 231; Hackett v. City of Ottawa, 99 U. S. 86, 95, 25 L. Ed. 363; Town of Evansville v. Dennett, 161 U. S. 434, 439, 16 Sup. Ct. 613, 40 L. Ed. 760; Waite v. City of Santa Cruz, 22 Sup. Ct. 327, 333, 46 L. Ed. 552; Wesson v. Saline Co., 73 Fed. 917, 919, 20 C. C. A. 227, 229.

An attempt is made to escape from the effect of this principle upon the grounds that it is inapplicable in this case, where the resolution or ordinance is clearly designated by its date or title in the recital, and where the question is not whether there has been a compliance with the terms of the ordinance or resolution, but whether or not the innocent purchaser must take notice of its contents. A brief reference to the decisions of the supreme court to which we have adverted will demonstrate the futility of this endeavor. The board of directors of this district were authorized by chapter 132 of the Acts of the 18th General Assembly of the State of Iowa to issue bonds for the sole purpose of funding the bonded debt of the district. They certified in the face of these bonds that they had issued them in pursuance of that chapter. The legal effect and the plain meaning of that certificate were that these were funding bonds, issued to fund the valid bonded debt of their district. Let these facts be borne in mind as the following opinions are reviewed. In Hackett v. City of Ottawa, 99 U. S. 88, 95, 25 L. Ed. 363, the bonds in question contained recitals that they were issued by virtue of the charter of the city of Ottawa, and in accordance with certain ordinances, the dates and titles of which were set forth in full in the recital on the face of the bonds. The defense was that these ordinances disclosed the fact that the bonds were issued for a private purpose, and were consequently void, and that the bona fide purchaser was charged with notice of this fact, because he must know the terms of the ordinances whose dates and titles were set forth in his bonds. Upon this proposition the supreme court said:

"It is consistent with the pleas filed by the city that the testator of plaintiffs in error purchased the bonds before maturity for a valuable consideration, without any notice of want of authority in the city to issue them, and without any information as to the objects to which their proceeds were to be applied, beyond that furnished by the recited titles of the ordinances. For all corporate purposes, as we have seen, the council, if so instructed by a majority of the voters attending at an election for that purpose, had undoubted authority, under the charter of the city, to borrow money upon its credit, and to issue bonds therefor. The bonds in suit, by their recital of the titles of the ordinances under which they were issued, in effect, assured the purchaser that they were to be used for municipal purposes, with the previous sanction, duly given, of a majority of the legal voters of the city. If he would have been bound, under some circumstances, to take notice, at his peril, of the provisions of the ordinances, he was relieved from any responsibility or duty in that regard by reason of the representation, upon the face of the bonds, that the ordinances under which they were issued were ordinances 'providing for a loan for municipal purposes.' Such a representa-

tion by the constituted authorities of the city, under its corporate seal, would naturally avert suspicion of bad faith upon their part, and induce the purchaser to omit an examination of the ordinances themselves. It was, substantially, a declaration by the city, with the consent of a majority of its legal voters, that purchasers need not examine the ordinances, since their title indicated a loan for municipal purposes. The city is therefore estopped, by its own representations, to say, as against a bona fide holder of the bonds, that they were not issued or used for municipal or corporate purposes. It cannot now be heard, as against him, to dispute their validity. Had the bonds, upon their face, made no reference whatever to the charter of the city, or recited only those provisions which empowered the council to borrow money upon the credit of the city, and to issue bonds therefor, the liability of the city to him could not be questioned. Much less can it be questioned, in view of the additional recital in the bonds, that they were issued in pursuance of an ordinance providing for a loan for municipal purposes; that is, for purposes authorized by its charter. Marshall Co. v. Schenck, 5 Wall. 772, 18 L. Ed. 556. It would be the grossest injustice, and in conflict with all the past utterances of this court, to permit the city, having power under some circumstances to issue negotiable securities, to escape liability upon the ground of the falsity of its own representations, made through official agents, and under its corporate seal, as to the purposes with which these bonds were issued. Whether such representations were made inadvertently, or with the intention, by the use of inaccurate titles of ordinances, to avert inquiry as to the real object in issuing the bonds, and thereby facilitate their negotiation in the money markets of the country, in either case, the city, both upon principle and authority, is cut off from any such defense. What this court declared through Mr. Justice Campbell, in Zabriskie v. Railroad Co., 23 How. 381, 16 L. Ed. 488, as to a private corporation, and repeated, through Mr. Justice Clifford, in Bissell v. City of Jeffersonville, 24 How. 287, 16 L. Ed. 664, as to a municipal corporation, may be reiterated as peculiarly applicable to this case: 'A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced.'"

In Town of Evansville v. Dennett, 161 U. S. 434, 439, 443, 16 Sup. Ct. 613, 615, 40 L. Ed. 760, this question was propounded to the supreme court:

"Does the recital in the series of bonds issued in payment of subscription to the Evansville, Henderson & Nashville Railroad Company, that they were issued 'in pursuance of an act of the legislature of the state of Indiana and ordinances of the city council of said city, passed in pursuance thereof,' put a purchaser upon inquiry as to the terms of the ordinances under which the bonds were issued?"

And the supreme court answered it in the negative.

In Waite v. City of Santa Cruz, 22 Sup. Ct. 327, 328, 333, 334, 46 L. Ed. 552, the bonds recited that they were issued in pursuance of the enabling act and of the ordinances of the city. Those ordinances disclosed the fact that some of the bonds for which the bonds in suit were exchanged were not the bonds of the city, but were the bonds of a private corporation, and the circuit court of appeals of the Ninth circuit held that the innocent purchaser was charged with knowledge of the contents of these ordinances, and sustained the defense of the city. The supreme court reversed that judgment, and said:

"The city of Santa Cruz had power, under the constitution and laws of California, to refund its outstanding indebtedness, evidenced by bonds and warrants. The nature and extent of such indebtedness were matters peculiarly within the knowledge of its constituted authorities. When, therefore,

the refunding bonds in suit were issued with the recitals therein contained, the city thereby represented that it issued them under, and in pursuance of, and in conformity with, the act of 1893 and the constitution of the state. As nothing on the face of the bonds suggested that such representations were false, purchasers had the right to assume that they were true, especially in view of the broad recital that everything required by law to be done and performed before executing the bonds had been done and performed by the city. As there was power in the city to issue refunding bonds to be used in discharging its outstanding indebtedness of a specified kind, purchasers were entitled to rely upon the truth of the recitals in the bonds that they were of the class which the act of 1893 authorized to be refunded. They were under no duty to go further, and examine the ordinances of the city, to ascertain whether the recitals were false. On the contrary, purchasers could assume that the ordinances would disclose nothing in conflict with the recitals in the bonds."

These decisions and opinions of the supreme court conclusively answer the question presented in this case, and render any independent discussion of it unnecessary and useless. They demonstrate the fact that, so far at least as the federal courts are concerned, it is now the settled law of this country that a bona fide purchaser of municipal bonds, which recite that they were issued in pursuance of a statute which authorized the municipality to send them forth for a lawful purpose, and which also recite that they were issued in conformity with an ordinance or resolution whose date or title is specified in the recital, which, if read, would disclose the fact that they were issued for an unlawful purpose, is not charged with notice of the terms or contents of the ordinance or resolution, and the municipality cannot avail itself of the facts there disclosed to defeat its bonds.

This case, therefore, stands in this way: These bonds were issued and exchanged for outstanding bonds of the district at the same time with 37 other bonds, which, together with these, aggregated $23,700,—an amount more than six times the constitutional indebtedness of the district. But the face of the bonds did not disclose this fact. The plaintiff bought but three bonds, and their aggregate amount was only $2,000,—an amount far within the limit of the district's lawful indebtedness,—so that there was nothing in the bonds or in the transaction which resulted in their purchase to charge the plaintiff with notice of the defense here urged. The members of the board of directors were the officers and financial managers of the district. The amount, character, and validity of its bonds, judgments, warrants, and debts were facts peculiarly within their knowledge. Chapter 132 empowered them to issue these bonds for the purpose of funding the bonded debt of their district. They could lawfully issue these new bonds only to pay the just and valid debts of the quasi municipality which they represented, and their primary duty was to ascertain the validity of every bond in return for which they issued a new obligation. The law vested them with the power, and charged them with the duty, to ascertain, determine, and certify, in the first instance, whether or not the district had a debt that was fundable under this chapter 132. It also gave them the power, and imposed upon them the duty, to ascertain, determine, and certify whether or not every act had been done, and every fact existed, which conditioned a lawful issue of these bonds before they sent them forth. When they certified, in the face of these nego-

tiable instruments, that they were issued "in pursuance of, and in conformity with, chapter 132," and "in strict compliance with the laws of the state of Iowa," and the plaintiff bought them in reliance upon that certificate, these facts conclusively estopped the district from denying —First, that the bonds for which they were exchanged were the just and valid obligations of the district (School Dist. v. Rew, 111 Fed. 1, 9, 49 C. C. A. 198, 206, 55 L. R. A. 364; Hughes Co. v. Livingston, 104 Fed. 306, 315, 43 C. C. A. 541, 550; City of Pierre v. Dunscomb, 45 C. C. A. 499, 106 Fed. 611, 616; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 277, 30 C. C. A. 38, 43, 49 L. R. A. 534; Ashley v. Board, 60 Fed. 55, 66, 8 C. C. A. 455, 466; Meyer v. Brown, 65 Cal. 583, 26 Pac. 281; Moran v. Miami Co., 2 Black, 722, 17 L. Ed. 342; Hackett v. City of Ottawa, 99 U. S. 86, 96, 25 L. Ed. 363; City of Ottawa v. First Nat. Bank of Portsmouth, 105 U. S. 342, 343, 26 L. Ed. 1127); and, second, that the refunding bonds neither created nor increased the indebtedness of the quasi municipality (School District v. Rew, 111 Fed. 1, 10, 49 C. C. A. 198, 206; City of Pierre v. Dunscomb, 45 C. C. A. 499, 106 Fed. 611, 617; Hughes Co. v. Livingston, 104 Fed. 306, 317, 43 C. C. A. 541, 552; Board v. Platt, 79 Fed. 567, 569, 25 C. C. A. 87, 89; E. H. Rollins & Sons v. Board of Com'rs of Gunnison Co., 80 Fed. 692, 698, 26 C. C. A. 91, 98; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 278, 30 C. C. A. 38, 44, 49 L. R. A. 534; Lyon Co. v. Keene Five Cent Sav. Bank, 100 Fed. 337, 339, 40 C. C. A. 391, 393). Funding bonds neither create nor increase a debt. They merely change its form, and an innocent purchaser of municipal bonds, which recite that they were issued to fund the debt of the municipality, is not required to consider or inquire concerning the excessive indebtedness, because that question does not arise. City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 46, 86 Fed. 272, 280, 49 L. R. A. 534; City of Pierre v. Dunscomb, 45 C. C. A. 499, 106 Fed. 611; School Dist. v. Rew, 111 Fed. 1, 10, 49 C. C. A. 198, 206.

These conclusions are the result of exhaustive and repeated arguments and decisions in this court of the questions here presented. The reasons which have led to them have been often stated at length and repeated in the opinions of this court to which reference has been made, and no good purpose would be served by again rehearsing them. They render the question whether or not the board of directors had the power to certify that these bonds were within the constitutional limit of indebtedness of the district, and the question what the effect of that certificate was, immaterial. Their certificate in the bonds that they were issued in pursuance of chapter 132, and in compliance with the laws of the state of Iowa, was a certificate of facts, which they had the power to determine and to certify. That certificate estopped the district from denying that these bonds were issued and exchanged for a valid debt of the district, and hence from denying that they neither created nor increased the liability of the quasi municipality. The district cannot maintain its defense in the face of this certificate. The judgment below is reversed, and the case is remanded to the circuit court, with directions to enter a judgment for the plaintiff in accordance with the views expressed in this opinion.