## SALMON v. RURAL INDEPENDENT SCHOOL DIST. OF ALLISON et al.

### (Circuit Court, N. D. Iowa, W. D. December 27, 1902.)

1. PARTIES—ACTION ON MUNICIPAL BONDS—TITLE OF PLAINTIFF.

Under Code Iowa, § 3459, requiring actions to be prosecuted in the name of the real party in interest, one to whom negotiable municipal bonds, transferable by delivery, have been delivered as agent for the purpose may sue thereon in his own name, being vested with the legal title, although in such case the action is subject to any defense which exists against the beneficial owner of the bonds.

2. MUNICIPAL BONDS—ESTOPPEL BY RECITALS—ACTUAL NOTICE OF INVALIDITY BY HOLDER.

A holder of bonds issued by a school district, which were in themselves in excess of the constitutional limit of the district's indebtedness, and contained no recital that they were issued in conformity to the Constitution, who obtained the issuance in exchange therefor of new bonds containing such recital, could not rely thereon to validate the new bonds in his hands.

3. SAME—ILLEGALITY IN INCEPTION—BURDEN OF PROVING WANT OF NOTICE.

A holder of bonds issued by a school district illegally and without consideration has the burden of proving that he acquired the same for value, and without notice of their invalidity, to entitle him to recover thereon.

4. SAME—ESTOPPEL BY RECITALS—BONA FIDE HOLDERS.

A holder of bonds of a school district, which were issued illegally and without consideration, and were in themselves in excess of the constitutional limit of the district's indebtedness, procured new bonds to be issued in exchange therefor, containing a recital that they were issued in accordance with the Constitution of the state, which recital was not contained in the original bonds. There was no proof that he purchased the original bonds for value and without notice of their invalidity, and he had actual knowledge that the recital in the new bonds was untrue. *Held*, in actions thereon by transferees, that one who obtained title by

---

¶ 3. Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.

See Municipal Corporations, vol. 36, Cent. Dig. § 2006.

descent from the original holder could not recover, but that, as against one who was shown to have been a bona fide purchaser for value and without notice, the district was estopped by the recitals that the bonds were issued in compliance with the statutes and Constitution of the state.

At Law. Action on bonds and coupons issued by the independent school district of Riverside. Jury trial waived, and case submitted to the court.

From the evidence submitted and the stipulations signed by the parties the court finds the facts to be as follows:

(1) The plaintiff, Charles B. Salmon, is now, and was when this action was begun, a citizen of the state of Wisconsin, and the defendants the rural independent school districts of Allison and Jackson were when this action was brought, and now are, corporations created under the laws of the state of Iowa, and the amount involved in the action exceeds the sum of two thousand dollars, exclusive of interest and costs.

(2) Under the laws of Iowa then in force, the independent school district of Riverside, in Lyon county, Iowa, was organized for school purposes in the year 1872, and continued its corporate existence until the year 1885, when the territory comprising that district was divided into two districts, now known as the rural independent district of Allison and the rural independent district of Jackson, and by operation of the laws of the state of Iowa said last-named districts succeeded to the property and liabilities of the former independent school district of Riverside, two-thirds of the liabilities being chargeable against the district of Allison, and one-third against the district of Jackson.

(3) The value of the taxable property, as shown by the state and county tax lists of Lyon county, Iowa, within the boundaries of the independent school district of Riverside, was as follows for the several years named:

| | |
|---|---|
| 1872 | $43,995 32 |
| 1873 | 68,307 01 |
| 1874 | 68,890 83 |
| 1875 | 70,435 64 |
| 1876 | 70,706 96 |
| 1877 | 57,247 58 |
| 1878 | 72,175 97 |
| 1879 | 47,220 00 |
| 1880 | 44,571 00 |
| 1881 | 44,033 00 |
| 1882 | 49,170 00 |

As shown by the tax lists of Lyon county in the year 1880, there was exempted from taxation property to the amount of $22,494 under the provisions of the timber culture acts of the state of Iowa, which sum is not included in the value of the taxable property of the district for that year as given in the above columns.

(4) The bonds declared on in this action are the following: No. 32, Dated April 1, 1881, due April 1, 1891, amount $500; No. 29, Dated July 1, 1881, due July 1, 1891, amount $500; No. 38, Dated July 1, 1881, due July 1, 1891, amount $500; No. 22, Dated November 5, 1881, due November 5, 1891, amount $1,000; No. 23, Dated November 5, 1881, due November 5, 1891, amount $1,000; No. 62, Dated February 15, 1882, due February 15, 1892, amount $100; No. 4, Dated March 11, 1882, due March 11, 1892, amount $1,000; No. 5, Dated March 11, 1882, due March 11, 1892, amount $1,000; No. 6, Dated March 11, 1882, due March 11, 1892, amount $1,000; No. 24, Dated March 11, 1882, due March 11, 1892, amount $1,000; No. 34, Dated March 11, 1882, due March 11, 1892, amount $1,000. And are payable to "——— or bearer," or to "——— or order." The signatures to the bonds and coupons are the genuine signatures of the persons signing the same, and these persons, when their signatures were attached to the bonds and coupons, held the offices indicated by their signatures in the independent school district of Riverside, of Lyon county, Iowa.

(5) That bond No. 32, dated April 1, 1881, for $500, was issued as part of a series of four bonds, numbering from 31 to 33, for $500 each, and one numbered 51, for $200.

(6) That bonds numbered 29 and 38, for $500 each, dated July 1, 1881, were part of a series numbered from 1 to 40, inclusive, and aggregating in amount $25,700, issued in pursuance of a resolution adopted by the board of directors of the independent school district of Riverside, and spread upon the records of said board, in the terms following:

"Riverside, Lyon County, Iowa, June 21, 1881.

"Board of directors of the independent school district of Riverside met at the school district at call of president, members all present. The following resolution was passed: Whereas, E. E. Carpenter comes before this board with bonds of said district bearing 10% interest, and offers to surrender to said district upon the issue and delivery to him new bonds of said district bearing 7%; the old bonds being taken at 70 cents on the dollar, bonds issued in the year 1873, on bonds issued in 1887 or later at par, in exchange for new bonds of said district: Therefore it is resolved by this board that they issue the bonds of said district for Riverside, and said bonds shall be issued by the president and secretary and delivered to the treasurer, to exchange as above stated. Said bonds shall number as follows: Bonds Nos. 1, 2, 3, 4, 5, 6, 7, 8, for one thousand dollars each; and bonds Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 39 for five hundred dollars each; and bond No. 40 for $200; and shall bear interest at 7%, payable semiannually, on the first day of January and July of each year; the above described bonds were issued and delivered to the treasurer for exchange. It is further resolved that the treasurer be authorized to exchange any bonds in his possession for old bonds of said district at 50 cents on the dollar, and be allowed 2% commission for refunding such bonds, as provided in the resolution of July 30, 1880. Board adjourned at call of president.

"G. W. Stoops, President."

(7) The bonds in suit, numbered 22 and 23, dated November 5, 1881, for $1,000 each, were part of a series numbered from 18 to 30, inclusive, for $1,000 each, and were issued pursuant to a resolution adopted by the board of directors of the independent school district of Riverside, reading as follows:

"Whereas, F. A. Keep came before the board with a proposition to settle with the district some bonds of said district which he held at the rate of 50 cents on the dollar, and to exchange new bonds drawing 7% interest, not counting the accrued interest: Now therefore it is resolved, by the board, that they issue bonds to the amount of $12,000, and exchange the same with the aforesaid F. A. Keep, and allow the treasurer 2% for exchange as provided in the resolutions of July 30, 1880. Therefore the secretary and president [is] authorized to issue the amount, and the president to turn over to the treasurer and take his receipt for the same. The following numbers were issued: 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, all for $1,000. There being no further business, adjourned, at call of chairman.

"G. R. Matthews, Secy.                    G. W. Stoops, President."

(8) The bonds in suit numbered 4, 5, 6, 24, and 34, dated March 11, 1882, for $1,000, each formed part of a series numbered from 1 to 39, inclusive, issued in pursuance of a resolution of the board of directors of the independent school district of Riverside, and spread upon the records of the board in the following terms:

"Riverside, March 11, 1882.

"Board of directors of independent district of Riverside, Lyon county, Iowa, met at the schoolhouse in said district on the 11th day of March, 1882. The following resolution was passed: Whereas, C. W. Rollins came before the board with a resolution to settle with the district some bonds of said district which he held to the amount of $72,000.00, at 50 cents on the dollar, and take in exchange new bonds, drawing 7% interest, not counting accrued interest: Now, therefore, it is resolved by the board that they issue bonds to the amount of $36,000.00, and exchange the same with the aforesaid C.

W. Rollins, and also to allow the treasurer 2 % for exchanging, as provided in resolutions of June 30, 1880. Therefore the secretary and president is authorized and directed to turn over to the treasurer, and take his receipt for the same, said bonds to be numbered as follows: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, $1,000 each; 25, 26, 27, 28, $500 each; 29, 30, 31, 32, $1,000 each; 33, 34, $500 each; 35, 36, 37, 38, 39, $1,000 each. There being no further business, adjourned subject to the call of the chairman."

(9) That the secretary's record of the proceedings of the board of directors of the independent school district of Riverside shows that beginning with July 12, 1877, and ending with March 11, 1882, the following amounts of bonds were ordered issued:

| | | | |
|---|---|---|---:|
| July | 12, 1877, | refunding bonds | $ 5,000 00 |
| Dec. | 15, 1877, | " " | 6,000 00 |
| July | 1, 1878, | " " | 8,300 00 |
| July | 16, 1878, | " " | 800 00 |
| Dec. | 19, 1878, | " " | 1,600 00 |
| June | 21, 1879, | " " | 500 00 |
| July | 15, 1879, | " " | 3,200 00 |
| Sept. | 11, 1879, | " " | 1,600 00 |
| Oct. | 15, 1879, | " " | 5,200 00 |
| July | 10, 1880, | " " | 3,300 00 |
| July | 3, 1880, | " " | 5,000 00 |
| June | 10, 1880, | " " | 10,000 00 |
| July | 30, 1880, | " " | 4,500 00 |
| Dec. | 4, 1880, | " " | 10,500 00 |
| April | 6, 1881, | " " | 1,700 00 |
| June | 21, 1881, | " " | 23,700 00 |
| Nov. | 5, 1881, | " " | 13,000 00 |
| Feb. | 15, 1882, | " " | 20,500 00 |
| March | 11, 1882, | " " | 36,000 00 |
| | Total | | $160,400 00 |

(10) That the highest valuation of the taxable property within the limits of the independent school district of Riverside during its existence was that of the year 1883, being in the sum of $98,168, the valuation for the year 1884, the last year of the district, being $97,575.

(11) That during the existence of the independent school district of Riverside there had been erected within its boundaries two schoolhouses, and no more, of the total value of $1,500.

(12) That the assessed valuation of the property within the rural independent district of Allison for the year 1885 was $72,974, for the year 1899 was the sum of $141,510, for the year 1900 was the sum of $146,086, and for the year 1901 was the sum of $149,699.

(13) That the assessed valuation of the property within the rural independent district of Jackson for the year 1885 was the sum of $31,431, for the year 1899 was the sum of $81,788, for the year 1900 was the sum of $83,603, and for the year 1901 was the sum of $82,479.

(14) That at the several dates when the bonds and coupons sued on were issued in the name of the independent school district of Riverside and prior thereto the said district of Riverside was indebted in amounts largely in excess of 5 per cent. of the taxable property within said school district, without including in such indebtedness the several bonds issued under date of April 1, 1881, July 1, 1881, November 5, 1881, February 15, 1882, and March 11, 1882.

(15) That prior to June 21, 1881, there were judgments rendered and outstanding against the independent school district of Riverside in the aggregate sum of $6,500, which the records of the courts showed were outstanding and unpaid at the several dates when the bonds in suit were issued, and prior to the division of the district of Riverside judgments amounting to $3,887.94 were rendered against it, all of which judgments have since been paid off by the defendant districts.

(16) At the time of the division of the district of Riverside there were outstanding judgment bonds issued by the district upon which judgment was rendered in the district court of Lyon county, Iowa, against the defendant districts, in the sum of $4,479.62, which judgment has since been paid by the defendant districts of Allison and Jackson.

(17) That none of the bonds in suit were issued or used in the payment or refunding of any judgment bonds issued by the independent school district of Riverside, or in payment or funding of any judgments against said district.

(18) The plaintiff herein, Charles B. Salmon, is now, and was when this suit was brought, the beneficial owner of bonds Nos. 62, 5, 22, 23, 29, and 34, declared on, together with the coupons belonging thereto. The remaining bonds and coupons declared on are now, and were when this suit was brought, the property of Mrs. Cora Andrews, and the same were by her given in charge of plaintiff for collection, he being her agent for that purpose, and being under obligation to account to Mrs. Cora Andrews for the proceeds, if any, realized from said bonds and coupons.

(19) The bonds and coupons of which the plaintiff is the beneficial owner, as stated in the last finding, became the property of plaintiff in the latter part of the year 1884, at which time the plaintiff bought the assets of the Citizens' National Bank of Beloit, Wis., including the bonds and coupons in question, the same being turned over by the Citizens' National Bank to the plaintiff at their face value.

(20) The bonds and coupons owned by Mrs. Cora Andrews came to her from her father's estate, James A. Chapman, who died about the year 1890, or possibly later, the exact date not being proven. James A. Chapman resided at Beloit, Wis., and at the time of the issuance of the bonds sued on was a director in the Citizens' National Bank of Beloit, Wisconsin.

(21) With the exception of bonds No. 32, dated April 1, 1881, for $500, and No. 62, for $100, dated February 15, 1882, the several bonds sued on were issued and came into the possession of James A. Chapman and the Citizens' National Bank of Beloit, Wisconsin, under the following circumstances: One E. E. Carpenter, in the years 1881 and 1882, and for some years previous thereto, had owned and managed a private bank, under the name of the Sioux Valley Bank, at Beloit, Lyon county, Iowa, and had dealt largely in the bonds issued by Lyon county and other counties in northwestern Iowa and by the school districts in these counties. Previous to the year 1881 the said Carpenter had sold to the Citizens' National Bank of Beloit, Wis., and to James A. Chapman, negotiable bonds issued under the name of the independent school district of Riverside to the amount of $8,000 or over, and had personally guarantied the payment thereof. These bonds did not contain a recital to the effect that they were issued in accordance with the Constitution of the state of Iowa, or that they were within the limit of indebtedness fixed by the Constitution with respect to municipal indebtedness. In the month of April, 1881, Carpenter was visiting at the house of James A. Chapman in Beloit, Wis., and at that time Chapman and Carpenter discussed the question of the advisability of getting an exchange of the bonds then held by the Citizens' National Bank and James A. Chapman, issued in the name of the independent school district of Riverside, which bonds were not then due, for new bonds which should contain a recital intended to avoid the effect of the 5 per cent. limitation on the debt creating power of the district contained in the Constitution of the state of Iowa. It was finally agreed that Carpenter should undertake to secure an exchange of the bonds held by the Citizens' National Bank and James A. Chapman, he being authorized to reduce the interest on the new bonds to 7 per cent., the old bonds bearing 10 per cent., for new bonds containing the proposed recital; it being further agreed that if the proposed exchange of bonds was secured Carpenter was to be released from his guaranty of the payment of the bonds so exchanged. In pursuance of this arrangement, Carpenter brought about an exchange of bonds, receiving for the Citizens' National Bank, of the bonds sued on, Nos. 5, 22, 23, 29, and 34, aggregating $4,500, and for James A. Chapman bonds Nos. 4, 6, 24, and 38, aggregating $3,500. In issuing the new bonds, forms were used which as originally printed did not contain any recital with respect to the Constitution of the state, but before the signing of

the bonds sued on there was written in on the face of the bond the words, "and in accordance with the Constitution of said state."

(22) The purpose of the exchange of bonds thus made was as stated by the said Carpenter in his testimony, wherein, in reply to the question, "What was the object in exchanging those bonds for new bonds drawing 7 %?" he answered, "The object on my part was to get rid of my guarantee, and the object on the part of Mr. Chapman was to get the statement that they were issued in accordance with the Constitution."

(23) During the year 1873 there had been issued in the name of the independent school district of Riverside bonds to the amount of $150,000 or more which were fraudulent and without consideration, and during the period beginning with July 12, 1877, and ending with March 11, 1882, there were issued bonds in the aggregate sum of $160,400, and it does not appear that the said independent school district of Riverside received any consideration therefor.

(24) At and prior to the times when E. E. Carpenter effected the exchange of the bonds owned by the Citizens' National Bank and James A. Chapman for the bonds now in suit, as set forth in finding No. 21, the said Carpenter had knowledge of the fact that the bonds of 1873 were without consideration, and had been issued to the amount of $150,000, and he also knew of the issue of bonds between 1877 and 1881 of at least $25,000, for which, in the language of said Carpenter, no fair consideration was received by the district.

(25) According to the testimony of E. E. Carpenter, the bonds owned by James A. Chapman and the Citizens' National Bank, and by him exchanged for the bonds in suit, were partly of the issues of 1877, 1878, and 1873.

(26) It does not appear that the independent school district of Riverside received any consideration in any form for the bonds for which the bonds in suit were exchanged.

(27) Bond No. 32, dated April 1, 1881, became, by its terms, due and payable on April 1, 1891, more than 10 years before this suit was brought.

(28) Bond No. 62, dated February 15, 1882, for $100, is the property of plaintiff. It contains no recital to the effect that it was issued in accordance with the Constitution of the state. At the date of its issue the independent school district of Riverside was indebted in an amount largely in excess of the constitutional limits. It is not now shown that the said school district of Riverside received any consideration for the issuance of this bond.

(29) On the backs of the several bonds sued on there is printed chapter 132 of the Acts of the 18th General Assembly of the State of Iowa, and the bonds and coupons are of the general form shown in Exhibits A, B, and C, attached to the petition in this case, and the bonds and coupons sued on, having been introduced in evidence, are hereby made part of these findings of facts.

(30) The amount of the bonds owned by the plaintiff, and included in this suit, is four thousand and six hundred dollars ($4,600). The amount of the coupons sued on, and not barred by the statute of limitations, is three hundred four and $50/100$ dollars ($304.50) The total interest due on the bonds and coupons at six per cent. per annum, up to December 30, 1902, is three thousand two hundred and forty-seven and $35/100$ dollars ($3,247.35). The total amount due on the bonds and coupons of which the plaintiff is the beneficial owner, including interest up to December 30, 1902, is the sum of eight thousand one hundred and fifty-four and $35/100$ dollars ($8,154.35).

Quick & Carter, for plaintiff.

O. J. Taylor and E. C. Roach, for defendants.

SHIRAS, District Judge (after stating the facts as above). The first question presented for determination in this case is whether the action in the name of the plaintiff can be maintained on the bonds which are the property of Mrs. Cora Andrews, it being claimed on part of the defendants that the provisions of section 3459 of the Code of Iowa, declaring that actions must be prosecuted in the name of

the real party in interest, forbids bringing a suit in the name of an agent. In Abell Note Co. v. Hurd, 85 Iowa, 559, 52 N. W. 488, the state Supreme Court, in construing this section of the Code, declared the law to be "that the party holding the legal title of a note or instrument may sue on it, though he be an agent or trustee, and liable to account to another for the proceeds of the recovery, but he is open in such case to any defense which exists against the party beneficially interested." The fact, therefore, that the plaintiff in this case is the agent of the beneficial owner does not prohibit bringing the action in his name, and the delivery to him of the possession of the bonds, which in effect are payable to bearer, with the authority to enforce the collection thereof, clothes him with sufficient title to maintain the action in his own name. Village of Kent v. Dana, 100 Fed. 56, 40 C. C. A. 281; O'Brien v. Smith, 68 U. S. (1 Black) 99, 17 L. Ed. 64.

The second count in the petition is based upon bond No. 32, for $500, dated April 1, 1881, and which by its terms came due on April 1, 1891. As this action was not begun until June 19, 1901, more than 10 years had elapsed after the maturity of the bonds before the bringing of the suit, and the bar of the state statute of limitations, pleaded by the defendants, defeats recovery thereon.

With the exception of bond No. 62, dated February 15, 1882, the remaining bonds sued on were those which were obtained in exchange for other bonds owned by the Citizens' National Bank and by James A. Chapman under the circumstances detailed in finding No. 21. Would these bonds be valid in the hands of the original owners thereof?

It is certainly clear from the evidence that when Carpenter, as the agent of the Citizens' National Bank and James A. Chapman, undertook to bring about the exchange of bonds, these parties well knew that the amount of bonds held by each party was in excess of 5 per cent. of the taxable property in the independent school district of Riverside, and therefore knew that the bonds to be issued to them under the contract of exchange would be in excess of the constitutional limit of 5 per cent. on the assessed value of the property in the district. As shown by the valuations of property within the district as set forth in finding No. 3, the district could not in the years 1880, 1881, or 1882 incur an indebtedness equal to $3,500 without exceeding the constitutional limit; and certainly when Chapman, acting in his own behalf and on behalf of the Citizens' National Bank, of which he was a director, arranged with Carpenter that the latter should take the bonds owned by himself and the bank, which amounted to $8,000, exclusive of interest, and exchange them for new bonds, he knew, as a matter of fact, that the bonds to be exchanged represented an amount largely in excess of the legal limit of indebtedness, and he well knew that if the proposed exchange was carried through the amount of bonds to be issued to himself and the bank would be largely in excess of the constitutional limit, and therefore it is not open to Chapman or to the bank to claim that they in good faith took the bonds in suit relying on the recital therein contained that they were issued in accordance with the Constitution of the state.

125 F.—16

Furthermore, in procuring the issuance of these bonds, Carpenter acted as the agent of the parties owning the bonds, and he well knew that the amount of bonds he was purposing to obtain was largely in excess of the limit of indebtedness prescribed by the Constitution, and, furthermore, that the bonds already issued in the name of the district greatly exceeded the legal limit. Under these circumstances, it would not be open to the bank or to Chapman to claim that they took the bonds in suit in good faith, and relying on the recital therein contained that the same were in accordance with the Constitution of the state. They knew that this recital was not true, and it was by their own procurement that this recital was placed in the bonds, and therefore it would not validate the bonds in their hands. If it be said that in fact the bonds sued on were exchanged for the other bonds held by the bank and Chapman, and therefore did not increase the indebtedness of the district, the question is whether it is shown that the bonds originally held by these parties were valid and enforceable against the district.

The evidence shows that these bonds were, in amount, in excess of the legal limit of indebtedness; that they did not contain any recital to the effect that they were in accordance with the Constitution of the state; that the district had not received any consideration therefor; and that, in effect, they were illegally and fraudulently issued.

If the present action had been brought by the bank and James A. Chapman on the bonds originally held by them, a recovery could not have been had thereon under the evidence adduced in this case, for the reasons (1) that the amount of bonds held by each of the parties was in excess of the limit imposed by the Constitution of the state upon the debt creating power of the district, and the bonds contained no recitals estopping the district from relying upon this defense; and (2) that the evidence showed that the bonds were issued without consideration, and were in fact illegal in their inception, thus casting the burden on the holders of the bonds of showing that they were in fact innocent holders thereof for value.

Under the settled rule, the parties were bound to take notice of the constitutional limitation upon the power of the district to create indebtedness, and of the amount of the taxable property within the district as shown by the tax lists; and, as the bonds taken and held by them were in excess of the legal limits, they could not be held to be valid and enforceable unless a state of facts were proven which would except them out of the constitutional prohibition, and this has not been done. Furthermore, as the bonds held by them were in fact without consideration and fraudulently issued, the burden would be shifted to them of proving that they were innocent holders for value thereof.

Thus, in Collins v. Gilbert, 94 U. S. 758, 761, 24 L. Ed. 170, the rule is stated to be that, "if it be alleged and proved that the instrument had its inception in illegality or fraud, a presumption arises from that proof that the plaintiff took it without value; or, in other words, it so far shifts the burden of proof that, unless the plaintiff gives satisfactory evidence that he gave value for the same, the defense will prevail."

The evidence fails to show with clearness what the consideration was, if any, for the original transfer of the bonds, and therefore it must be held that if this action was in the name of the Citizens' National Bank and James A. Chapman upon the bonds exchanged for those in suit, a recovery thereon could not be had for the reasons stated. The fact, however, that the bonds sued on would be invalid and nonenforceable if sued by the original holders does not necessarily defeat the suit as it now stands, provided it be shown that the present holders of the bonds, or either of them, are innocent holders for value of the bonds owned by them. Being bonds issued in exchange for other bonds, the municipality issuing them is estopped from pleading the constitutional inhibition against an innocent purchaser for value, this being the rule established by the repeated decisions of the Circuit Court of Appeals for this circuit. Independent School District v. Rew, 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364; Fairfield v. Rural Independent School Dist., 116 Fed. 838, 54 C. C. A. 342.

With respect to the bonds owned by Mrs. Cora Andrews, it is not shown that she paid value for them, or that she ever purchased them; the inference from the evidence being that she inherited them from her father, James A. Chapman. The exact date of his death is not proven, and it may be the fact, therefore, that the title or right to these bonds, which were issued in 1881 or 1882, and matured in 10 years from their date, did not pass to Mrs. Andrews until after their maturity. It not appearing that she became the owner of the bonds before they became due, and it not appearing that she paid value therefor, it cannot be held that she is an innocent holder for value of the bonds in question, and therefore the same defenses are available against her as would be open to the defendants if the action was in the name of James A. Chapman, and, as already held, he could not, if living, maintain the action thereon, and therefore there can be no recovery on the bonds and coupons belonging to Mrs. Andrews.

With respect to the bonds owned by Charles B. Salmon, and sued on in his own right, the evidence shows that he became the owner thereof before maturity and for value; and, although in amount those bonds exceeded the constitutional limit of 5 per cent. of the taxable property in the school district, yet as they were issued as refunding bonds, and recite that they were issued under the provisions of chapter 132, p. 127, of the Acts of the 18th General Assembly of the state, I am compelled to hold, under the rulings of the Circuit Court of Appeals in the cases already cited, that a recovery thereon can be had upon the bonds, and also upon all coupons maturing since June 19, 1891, as the statute of limitations bars recovery on all the coupons coming due more than 10 years before this action was commenced.

The total amount now due on the bonds and coupons owned by the plaintiff is the sum of $8,154.35, and for two-thirds of this amount, being $5,436.22, judgment will be entered in his favor against the rural independent district of Allison, and of this judgment $3,066.66 will bear interest at the contract rate of 7 per cent., and $2,369.56 at 6 per cent. For the remaining one-third of the total sum due on the bonds and coupons, being the sum of $2,718.11, judgment in favor

of the plaintiff will be entered against the rural independent school district of Jackson, of which amount $1,533.66 will bear interest at the contract rate of 7 per cent., and $1,284.41 at 6 per cent. Of the total taxable costs, one-half is adjudged against the plaintiff, two-sixths against the rural independent district of Allison, and one-sixth against the rural independent district of Jackson.