GAMBLE v. RURAL INDEPENDENT SCHOOL DIST. OF ALLISON et al.

(Circuit Court, N. D. Iowa, W. D. September 9, 1904.)

No. 160.

1. MUNICIPAL BONDS—FUNDING BONDS—ESTOPPEL BY RECITALS.

A recital in bonds issued by an Iowa school district that they were issued in pursuance of and in accordance with chapter 132, p. 127, of Acts 18th Gen. Assem., which is printed thereon, and only authorizes the issuance of bonds to refund outstanding bonded indebtedness of the district, is, in effect, a certification by the officers that all the provisions of law, statutory as well as constitutional, have been complied with, and estops the district, as against an innocent holder for value, to deny such fact, or that the bonds were issued and used to refund valid bonded indebtedness.

2. SAME—NEGOTIABILITY—FORM.

A municipal bond payable "to ——— or ———" is negotiable.

3. SAME—BONA FIDE PURCHASER—BURDEN OF PROOF.

A holder of negotiable municipal bonds which were fraudulently issued has the burden of proving that he is a bona fide purchaser for value, before due, without notice of any infirmity therein, or that the person from whom he purchased was such a holder.

4. SAME.

One who obtained a bond issued by a school district from a prior holder in payment for legal services rendered and to be rendered, and which were rendered to the full value of the bond, is an innocent holder for value, where the bond was not due, and contained nothing on its face to indicate its invalidity, and he had no knowledge or notice of any defect therein.

5. PARTIES—ACTION ON MUNICIPAL BONDS—TITLE OF PLAINTIFF.

A surviving partner, succeeding to the interest of his deceased partner in a municipal bond owned by the firm, as trustee for the decedent's heirs, may sue thereon in his own name under the Iowa statute.

6. MUNICIPAL BONDS—BONDS FRAUDULENT IN INCEPTION—LIMIT OF RECOVERY BY PURCHASER FOR NOMINAL CONSIDERATION.

A purchaser of a past-due and dishonored municipal bond of the face value, including accrued interest, of more than $2,200, for a consideration

¶ 3. Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.

of $50, such bond having been fraudulently issued, and invalid in the hands of the original holder, of which fact the purchaser had knowledge, is entitled to recover thereon only the consideration paid, although the seller was a bona fide purchaser for value before maturity, protected by the recitals therein, and entitled to recover the full amount.

**7. SAME—IOWA STATUTE.**

Code Iowa 1897, § 3070, which permits the want or failure of consideration to be shown in defense to an action on a written instrument, except to negotiable paper in the hands of innocent purchasers, but provides that, "if such paper has been procured by fraud upon the maker no holder thereof shall recover thereon of the maker a greater sum than he paid therefor," with interest and costs," applies to and governs an action on a bond of an Iowa school district which was fraudulently issued, brought by a holder who purchased the same after the statute was enacted, for a merely nominal consideration, with full knowledge of its original invalidity, and for the sole purpose of bringing suit thereon.

In Equity. Suit on school bonds. On final hearing.

This suit was commenced December 20, 1901, to recover the amount due upon certain negotiable school bonds and coupons attached issued by the Independent school district of Riverside, in Lyon county, a school corporation duly organized under the laws of Iowa.

### Finding of Facts.

From the evidence adduced and the stipulation of the parties the facts are found to be as follows:

(1) That the complainant herein at and prior to the time of the commencement of this suit was, and still is, a resident and citizen of the state of South Dakota. That the amount involved therein exceeds, exclusive of interest and costs, the sum or value of $2,000.

(2) That the Independent school district of Riverside, in Lyon county, Iowa, was duly created and organized under the laws of Iowa for school purposes in the year 1872, and continued its corporate existence and organization as such until the year 1885, when it ceased to exist, and all the assets belonging to and all the territory comprising said district became the property of, and was divided into, the Independent school district of Allison and the Independent school district of Jackson, which said school districts are now, under the law of Iowa, the Rural Independent school district of Allison and the Rural Independent school district of Jackson, the defendants herein; and said defendants are, and were when this suit was commenced, municipal school corporations duly organized and existing under the laws of Iowa.

(3) That under date of February 15, 1882, the Independent school district of Riverside issued a series of 34 bonds, aggregating $20,500 in amount, of which those numbered from 32 to 46, inclusive, were for $1,000 each, those numbered from 47 to 55, inclusive, for $500 each, and those numbered from 56 to 65, inclusive, for $100 each; which said bonds were issued in pursuance of a resolution duly adopted at a regular meeting by the board of directors of the Independent school district of Riverside on February 15, 1882, which resolution was duly recorded in the secretary's record, and is as follows:

"Riverside, Lyon County Iowa, February 15, 1882.

"Whereas there is a bonded indebtedness against the Independent School District of Riverside, drawing interest at the rate of 10 per cent. per annum, therefore, be it resolved, by the members of the Board of Directors of said District that the President and Secretary are hereby authorized and empowered by the members of the Board, and in conformity with a vote of said District, to issue the new bonds of said Independent District bearing interest at the rate of 7 per cent. per annum, interest payable semi-annually on the 15th day of February and August of each year, said new bonds to be issued in conformity with chapter 132, p. 127, Laws of the 18th General Assembly, for the purpose of refunding the outstanding indebtedness of said District. Said new bonds to run ten years from February 15th, 1882, redeemable at the option of said District after five years, and to be exchanged by the Treasurer

for cash or bonds; provided, said new bonds to be numbered from 32 to 46, for $1,000.00 each; numbered from 47 to 55, $500.00 each; numbered from 56 to 65 to be for one hundred dollars each.

"Attest, G. R. Matthews, Secy.                          G. W. Stoop, Pres."

(4) That bonds numbered 43 and 46, in suit, belonging to said issue of February 15, 1882, are offered in evidence, and are as follows:

"Number 46.                United States of America                $1,000.00
"State of Iowa, County of Lyon.
"The Independent School District of
"Riverside.
"In the County of Iowa, in said State.

"For value received promise to pay to ——— or ——— at the office of the Treasurer in Riverside, on the 15th day of February A. D. 1892, or at any time before that date after the expiration of five years from date of issue and after Ninety days notice at the pleasure of said Independent School District, the sum of One Thousand dollars, with interest thereon at the rate of 7 per cent. per annum payable semi annually at the office of the Treasurer in Riverside, on the 15th day of August and February in each year on presentation and surrender of the interest coupons hereto attached.

"This bond is executed and issued by the Board of Directors of said Independent School District in pursuance of and in accordance with Chapter 132 Acts of the Eighteenth General Assembly of Iowa, and in conformity with a resolution of said Board of Directors passed in accordance with said Chapter 132 at a meeting thereof held the Fifteenth day of February 1882.

"In Witness Whereof, the said District by its Board of Directors has caused this Bond to be signed by the President of the Board, and attested by the Secretary this Fifteenth day of February 1882.

"G. A. Stoop, President of said Board.
"G. R. Matthews, Secretary of said Board."

On the back of which bond is printed the said chapter 132, p. 127, Acts of the Eighteenth General Assembly of Iowa.

Bond 43 is the same as bond No. 46, except as to number.

(5) That the officers who signed said bonds held the respective offices as indicated by their signatures thereto, and were the duly elected and qualified officers of said Independent school district of Riverside at the times the bonds and coupons in suit were signed, issued, and delivered, and the signatures to said bonds and coupons are the genuine signatures of the officers of said district by whom they purport to be signed.

(6) That the value of the taxable property, as shown by the state and county tax lists of Lyon county, Iowa, within the said Independent school district of Riverside was for the years 1872 to 1883, inclusive, as follows, to wit: For the year 1872, $43,995.32; for the year 1873, $68,307.01; for the year 1874, $68,890.83; for the year 1875, $70,435.64; for the year 1876, $70,706.96; for the year 1877, $57,247.58; for the year 1878, $72,175.97; for the year 1879, $47,220; for the year 1880, $44,571; for the year 1881, $44,033; for the year 1882, $49,170; for the year 1883, $98,168.

(7) That, as shown by the tax lists of Lyon county, Iowa, there was for the year 1881 a taxable value of $27,568 of property exempt from taxation in said Independent school district of Riverside by reason of and on account of the timber culture act of the state of Iowa, and for the year 1882 there was a taxable value of $25,142 of property exempt from taxation in said district for the same reason, which said amounts are not included in the valuation for the years 1881 and 1882 as given above.

(8) That during all the time from January, 1873, to February 15, 1882, the said Independent school district of Riverside had outstanding indebtedness against it in the form of judgments and bonds in an amount in the aggregate largely in excess of 5 per cent. of value of the taxable property within the limits of said school district, as shown by the several state and county tax lists for each of the years during the said period.

(9) That none of the bonds in suit were in fact issued to refund, and they

did not refund, any judgments or judgment bonds issued by the said Independent school district of Riverside.

(10) That prior to February 15, 1882, judgments were rendered in various courts against the said Independent school district of Riverside on evidences of indebtedness issued by said school district prior thereto, which said judgments amounted to $6,500, and remained unpaid and unsatisfied at the date of the issuing of the bonds in suit.

(11) That the secretary's record of the said Independent school district of Riverside shows the dates and amounts of the bonds issued by said district and the resolutions under which the same were issued between the years 1877 up to March 11, 1882, as follows, to wit:

| | | |
|---|---|---:|
| July 12, 1877, | refunding bonds | $ 5,000 |
| Dec. 15, 1877, | refunding bonds | 6,000 |
| July    1878, | refunding bonds | 8,300 |
| July 16, 1878, | judgment bonds | 800 |
| Dec. 19, 1878, | refunding bonds | 1,600 |
| June 21, 1879, | judgment bonds | 500 |
| July 15, 1879, | refunding bonds | 3,200 |
| Sept. 11, 1879, | refunding bonds | 1,600 |
| Oct. 15, 1879, | refunding bonds | 5,200 |
| July 10, 1880, | refunding bonds | 3,300 |
| July  3, 1880, | refunding bonds | 5,000 |
| June 10, 1880, | refunding bonds | 10,000 |
| July 30, 1880, | refunding bonds | 4,500 |
| Dec.  4, 1880, | refunding bonds | 10,500 |
| April  6, 1881, | refunding bonds | 1,700 |
| June 21, 1881, | refunding bonds | 23,700 |
| Nov.  5, 1881, | refunding bonds | 13,000 |
| Feb. 15, 1882, | refunding bonds | 20,500 |
| Mch. 11, 1882, | refunding bonds | 36,000 |

Total .................................................$160,400

(12) That the assessed valuation of the Independent school district of Allison for the year 1901 was the sum of $149,699, and of the Independent school district of Jackson for the same year the sum of $82,479.

(13) That prior to the division of the old Independent school district of Riverside into the two new defendant districts in the year 1885 there had been erected in the old Independent school district of Riverside only two schoolhouses, the valuation of which was not to exceed $1,500.

(14) That on August 19, 1882, bond No. 46 of the issue of February 15, 1882, was purchased from one E. E. Carpenter by the law firm of Gamble Bros., of Yankton, S. D., which firm was composed of John R. Gamble, deceased, and Robert J. Gamble, the complainant herein, the consideration paid for said bond by said firm of Gamble Bros. being professional legal services already rendered and to be rendered by said firm of Gamble Bros. at the instance and request of said E. E. Carpenter. That said firm of Gamble Bros. immediately upon receiving said bond credited said E. E. Carpenter on the firm books with $1,000 and accrued interest, and said firm accepted said bond in payment for such legal services rendered and to be rendered; all of which services were fully rendered in 1882, and before notice of the invalidity of said bond, and were of the value of more than the face of said bond and accrued interest.

(15) That said John R. Gamble died August, 1891, and the complainant has succeeded to the interest and right of his deceased brother and partner in and to said bond, either in his own right or as trustee for the heirs of said John R. Gamble, deceased, and has full power and authority from all of said heirs to collect the same and sue thereon in his own name. That all of said heirs are now, and were when this suit was commenced, citizens of states other than the state of Iowa.

(16) That said firm of Gamble Bros. so acquired said bond No. 46 at Yankton, S. D., without any knowledge or notice of any fraud or illegality in the issuance, execution, or sale of the same, and purchased said bond in the ordinary course of business, before maturity, relying upon the recitals therein and thereon contained.

(17) That one Julia Spafford, a resident and citizen of the city of Rockford, in the state of Illinois, through her agent, Lewis B. Gregory, also a resident and citizen of said city of Rockford, purchased bond No. 43, involved in this suit, in the year 1883 or 1884, from E. E. Carpenter, at Rockford, Ill., in the ordinary and due course of business, paying him therefor its par value and the accrued interest in cash and so purchased said bond before maturity, without notice of any defect therein or defense thereto, relying on the recitals therein and thereon contained.

(18) That at the time of purchasing said bond No. 43, or thereafter during the years 1883 or 1884, the said E. E. Carpenter also sold the said Lewis B. Gregory other bonds of the Independent school district of Riverside belonging to several different issues, the amount of which bonds, including said bond No. 43, aggregated $10,500; all of which were purchased without any notice of the invalidity of said bonds. Of the bonds so purchased the said Gregory purchased for Julia Spafford, as her agent, $6,500 of bonds as follows: Three bonds for $500 each, belonging to the issue of June 21, 1881; four bonds for $1,000 each, belonging to the issue of November 5, 1881; and said bond No. 43, for $1,000, belonging to the issue of February 15, 1882; said bond No. 43 being the only bond of the issue of February 15, 1882, which was at any time purchased, owned, or held by said Spafford or Gregory.

(19) That in July 1880, the said Julia Spafford died, and under her last will and testament said bond No. 43 passed to and became the property of Emma G. Mason, a resident and citizen of Eau Claire, Wis., and a daughter of said Julia Spafford, deceased, who, November 1, 1901, sold the same to Robert J. Gamble, the complainant herein, for the sum of $50; and said complainant is the absolute owner of said bond and so bought the same that with bond No. 46 he might have an amount within the jurisdiction of the Circuit Court of the United States.

(20) That the bond sued on numbered 17, bearing date October 11, 1873, and all the interest coupons thereto attached, and also all the interest coupons attached to the bonds sued on numbered 43 and 46, bearing date of February 15, 1882, excepting only the last coupon on each of said bonds numbered 43 and 46 maturing February 15, 1892, for the sum of $35 each, as well as the causes of action thereon, are completely barred by the statute of limitations.

(21) That the parties have agreed and stipulated that if the complainant's claims, or any part thereof, are found and adjudged by the court to constitute an enforceable indebtedness against the said defendants, then to the extent that the said indebtedness shall be held to be enforceable the said defendants are to be held liable therefor, and should pay off the same, and judgments be entered by the court against them thereon in the proportion of two-thirds thereof by the defendant Rural Independent school district of Allison and one-third thereof by the defendant Rural Independent school district of Jackson; and the court finds from the evidence that such apportionment of the said indebtedness between said defendants would be just and equitable.

(22) That the said complainant, Robert J. Gamble, never owned or held any other bonds of the said Independent school district of Riverside than those involved in this suit.

Hubbard & Burgess, for complainant.

E. C. Roach, for defendants.

REED, District Judge (after stating the facts as above). The bonds sued upon are No. 17, for $500, issued by the Independent school district of Riverside, Lyon county, Iowa, October 11, 1873, and Nos. 43 and 46, issued by said district February 15, 1882. Bond No. 17, and all coupons thereon, were fully barred by the statute of limitations prior to the commencement of this suit. As there can be no recovery thereon for that reason, this bond need not be further considered.

Bonds Nos. 43 and 46 are a part of the issue of bonds of February 15, 1882. The defense thereto is that said bonds were fraudulently

issued by the officers of said Independent school district of Riverside; that said issue of bonds and those which they purport to refund were, when issued, far in excess of the amount of indebtedness that said school district could lawfully incur under the Constitution and laws of Iowa, and are therefore void; that complainant is not a good-faith holder of the bonds sued upon; that the interest coupons thereon maturing more than 10 years before the commencement of this suit are barred by the statute of limitations; and that complainant's remedy is at law. The capacity in which complainant brings the suit upon bond No. 46 is not questioned by the defendants.

The right of complainant to proceed in equity instead of at law was determined by overruling a demurrer to the bill at a former term of the court which presented that question. There is no reason to hold otherwise now, and that question need not be further considered.

The complainant alleges that he is a good-faith holder of the bonds, and that the defendants, by reason of the recitals therein, are estopped from denying as against him their validity. Each of the bonds is payable "to ——— or ——— at the office of the Treasurer of the District in Riverside, Iowa," and contains this recital:

"This bond is executed and issued by the Board of Directors of said Independent School District, in pursuance of, and in accordance with, Chapter 132 Acts of the 18th General Assembly of Iowa, and in accordance with a resolution of said Board of Directors, passed in accordance with said chapter 132, at a meeting thereof, held the 15th day of February 1882."

Under the facts found, it must be held that the bonds were procured by fraud upon the school district, and that at the time they were so issued other bonds of the district were outstanding against it, far in excess of the limit of indebtedness which said school corporation could lawfully incur under the Constitution and laws of Iowa. They were issued, however, as refunding-bonds, and recite that they were issued in pursuance of and in accordance with chapter 132, p. 127, Acts 18th Gen. Assem. Iowa, a copy of which act appears upon each of the bonds. They were issued under the same circumstances as were the bonds involved in Salmon v. School District (C. C.) 125 Fed. 235, and Fairfield v. School District (C. C.) 111 Fed. 454; Id., 54 C. C. A. 342, 116 Fed. 838. In fact, they are a part of the same issue as bond No. 62 involved in the Salmon Case. The only difference between them and the bonds other than the bond No. 62 in the Salmon Case is that the recitals do not contain the words, "and in accordance with the Constitution of said state," or "that the amount of this bond is within the constitutional limit of indebtedness fixed by section 3, article 11 of the state Constitution." It is the settled rule that purchasers of school corporation bonds or securities are bound to take notice of the limit fixed by law upon the power of the corporation to create indebtedness and of the amount it may lawfully incur. It is equally well settled that such corporations may be estopped by the act of its duly appointed officer from denying, as against innocent holders of such securities, the validity thereof.

Gunnison County v. Rollins, 174 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; Independent District v. Rew, 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364; Fairfield v. School District, 116 Fed. 838, 54 C. C. A. 342. Some of the authorities make a distinction between such a recital as these bonds contain and one which recites "that this bond is issued in accordance with the Constitution of the state," or "that the amount of this bond is within the limit of in-. debtedness fixed by the Constitution of the state." Lake County v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065. This distinction, however, rests upon differences in statutory or constitutional provisions as shown in Gunnison County v. Rollins, 174 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689, above, where the authorities are fully reviewed, and the distinctions pointed out. The distinction seems quite immaterial, however, under the Iowa Constitution and the Acts of the Eighteenth General Assembly of that state. The Constitution of Iowa simply limits the amount of indebtedness that the school corporation may incur. It does not authorize the corporation to issue negotiable instruments, or any form of evidence of its indebtedness. That is left for the General Assembly. Chapter 132, p. 127, Acts 18th Gen. Assem., only authorizes the school district to issue its negotiable bonds to refund its outstanding bonded indebtedness. Neither the Constitution nor the legislative enactment prescribes any public record whereby the amount or validity of the outstanding obligations may be ascertained. This is for the officers of the school district to determine before issuing the refunding bonds, and when they certify upon the face of the refunding bonds that they were issued in pursuance of and in accordance with the acts of the General Assembly authorizing the issue of- such bonds, the recital is, in legal effect, a certificate that the provisions of the law, statutory as well as fundamental, have been complied with; and if the individual bond upon its face does not show this recital to be false the school district is estopped from denying its truth as against an innocent holder thereof for value before due. This is the conclusion of the Court of Appeals in Independent District v. Rew, 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364, and in Fairfield v. School District, 116 Fed. 838, 54 C. C. A. 342. In the latter named case it is said of these. refunding bonds:

"Not only this, but if, as against the plaintiff, an innocent purchaser of these bonds, the district was estopped by the recitals therein from denying that they were exchanged for old bonds which evidenced a lawful debt of the district; then it is by the same mark estopped from denying that the issue of these bonds neither created nor increased the debt of the district, and the fact that its debt was far beyond its constitutional limit when they were issued and the recital in the bonds that they are within that limit * * * both become immaterial, and require no further consideration. * * * The board of directors of the district were authorized by chapter 132, p. 127, Acts of the Eighteenth General Assembly of the state of Iowa, to issue bonds for the sole purpose of funding the bonded debt of the district. They certified in the face of these bonds that they had issued them in pursuance of that chapter. The legal effect and the plain meaning of that certificate were that these were funding bonds, issued to fund the valid bonded debt of the district."

The authorities are then reviewed, and the conclusions deducible therefrom stated as follows:

"When they [the board of directors] certified upon the face of these negotiable instruments that they were issued in pursuance of, and in conformity with chapter 132, p. 127, and in strict compliance with the law of Iowa, and the plaintiff bought them in reliance upon that certificate, these facts conclusively estopped the district from denying (1) that the bonds for which they were exchanged were the just and valid obligations of the district; (2) that the refunding bonds neither created nor increased the indebtedness of the district. * * * They merely changed its form, and an innocent purchaser of municipal bonds which recite that they were issued to refund the debt of the municipality is not required to consider or inquire concerning the excessive indebtedness, because that question does not arise."

The conclusion, therefore, is that the bonds in suit, having been issued as refunding bonds, under chapter 132, p. 127, Acts of the Eighteenth General Assembly of the state of Iowa, and which recite upon their face that they are issued in pursuance of and in accordance with that act, bring them within the rule announced in the Fairfield and other cases, though they do not directly recite that they "are in accordance with the Constitution," or that "the amount is within the limit of indebtedness fixed by the Constitution of the state." A writ of certiorari was denied by the Supreme Court in the Fairfield Case, 187 U. S. 643, 23 Sup. Ct. 843, 47 L. Ed. 346. The questions thus determined are conclusive upon this court, and must be held to preclude the defendants upon each of the defenses interposed by them to these bonds, except those of the bona fides of the complainant's purchase and the amount that he may recover.

The bonds are negotiable, though the name of the payee and the word "order" or "bearer" are left in blank. White v. V. & M. R. R. Co., 21 How. 575, 16 L. Ed. 221. In this case the Supreme Court said:

"We think it quite clear, on looking into the agreed statement of facts, in connection with the bonds and the mortgage given to secure their payment, that it was the intention of the company, by issuing the bonds in blank, to make them negotiable, and payable to the holder, as bearer, and that the holder might fill up the blank with his own name, or make them payable to himself or bearer, or to order. In other words, the company intended by the blank to leave the holder his option as to the form or character of negotiability, without restriction. If the utmost latitude in this respect was not intended, why leave the payee in blank when issuing the bonds, or why not fix the limit of negotiability, or negative it altogether? To adopt any other conclusion would seem to us to be unjust to the company, for then the blank would be wholly unmeaning, or, if any, a meaning calculated, if not intended, to embarrass the title of the holder."

Having been fraudulently issued, though they are negotiable, the burden is upon the complainant to show that he is a bona fide holder thereof for value before due, without notice of any infirmity therein, or that the person from whom he obtained them was such a holder. Smith v. Sac County, 11 Wall. 139, 20 L. Ed. 102; Collins v. Gilbert, 94 U. S. 758, 24 L. Ed. 170; Skinner v. Raynor, 95 Iowa, 536, 64 N. W. 601. Has he done so? He did not obtain either of them directly from the school district of Riverside. Bond No. 46 was obtained by him and his brother, John R. Gamble, as

copartners in the practice of law at Yankton, S. D., from one E. E. Carpenter, in August, 1882, in payment pro tanto of an indebtedness then owing that firm from Carpenter for legal services which had been rendered and for services to be rendered in the future, and which afterwards were rendered to Carpenter by said firm. The value of such indebtedness and of the services so rendered were, under the evidence, greater than the value of the bond. Neither member of the firm of Gamble Bros. had any notice of any infirmity or defect in the bond at the time the firm so obtained it and rendered the services to Carpenter. The bond is dated February 15, 1882, and is for $1,000. The assessed valuation of the district for 1881 was $71,601. The amount of the bond, therefore, is well within the limit of indebtedness that the district might lawfully incur. There is nothing upon its face to show that it, or the amount of the issue of which it is a part, was in excess of that limit, and neither the complainant nor his brother had any notice that the issue was in excess of that limit. They were, therefore, innocent holders of the bond. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Brooklyn C. & M. Ry. Co. v. Nat. Bank, 102 U. S. 14, 26 L. Ed. 61. John R. Gamble died in 1891, before the maturity of the bond. The complainant has succeeded to the interest and right of his deceased brother and partner therein as trustee for the heirs of his deceased brother, and authorized to sue thereon in his own name to recover such interest. Abell Note Co. v. Hurd, 85 Iowa, 559, 52 N. W. 488; Salmon v. School District (C. C.) 125 Fed. 235; Kent v. Daly, 100 Fed. 56, 40 C. C. A. 281. The coupons upon this bond, other than the one maturing February 15, 1892, were barred by the statute of limitations, and there can be no recovery thereon.

Bond No. 43 was purchased by Mrs. Julia Spafford through her agent, Lewis B. Gregory, at Rockford, Ill. (where both resided), in 1883 or 1884, from E. E. Carpenter, who paid him therefore in cash its par value and the accrued interest, without notice of any infirmity therein or defense thereto. This bond is also of the issue of February 15, 1882, is for $1,000, and contains the same recitals as bond No. 46, and by itself is well within the limit of indebtedness which the district might lawfully incur upon the valuation of 1880 or 1881. This is the only bond of that issue that Mrs. Spafford ever held. But either at the same time that Mr. Gregory bought this bond, or later in the year 1883 or 1884, he also bought for her $5,000 in bonds of the issues of June 21 and of November 5, 1881, from Carpenter, making a total of $6,500 of the bonds of the Riverside district that he bought for Mrs. Spafford. From the testimony of Mr. Gregory it is uncertain whether he bought the entire lot of $6,500 of bonds at one time or $5,500 of them after he bought No. 43. He says: "I bought this bond 43, along with others, from E. E. Carpenter, who came to my house in Rockford, Illinois. Prior to the time of its purchase I knew nothing of other bonds outstanding against the district." If he bought the $6,500 of bonds at one time, he would be charged with notice that this amount was in excess of the limit of indebtedness that the district might lawfully incur upon the valuation of 1880 or 1881. But this is not material, for outstanding bonds of the district to this amount or greater might be valid, though in excess of the constitutional limit; and purchasers of

the refunding bonds are relieved by the recitals therein from inquiring as to the validity of the outstanding bonds which they were to refund. Independent District v. Rew, 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364; Fairfield v. School District, 116 Fed. 838, 54 C. C. A. 342. It is made to appear, therefore, that Mrs. Spafford was an innocent holder of bond No. 43, for value, before its maturity.

What amount, then, may complainant recover thereon? He purchased this bond long after it was dishonored, and paid therefor only $50, a mere nominal consideration, and contends that by such purchase he succeeds to the rights of Mrs. Spafford, and may recover thereon to the same extent that she could have recovered; and cites Cromwell v. Sac County, 96 U. S. 51, 24 L. Ed. 681; Scotland v. Hill, 132 U. S. 294, 10 Sup. Ct. 26, 33 L. Ed. 261, and some other cases in support of such contention. These authorities support the general proposition that an innocent holder of negotiable securities may transfer them after their maturity, and that the transferee for value will thereby succeed to the title and rights of such innocent holder. In Cromwell v. Sac County it is admitted that there are many decisions in conflict with the conclusion there reached. In each of these cases it appears that the holder so entitled to recover the full amount obtained the paper in the usual course of business for a valuable consideration, in many cases near to its full value, without notice of its infirmity other than that imparted by the fact that it was overdue. In no cause has the Supreme Court held that a purchaser of negotiable paper illegal or fraudulent in its inception, for a mere nominal consideration, and when the bar of the statute of limitations is almost complete, with full notice of its illegal or fraudulent inception, can recover the full amount thereof, with accrued interest, from the maker; and it does not seem necessary to hold that he can in order to protect the rights of bona fide holders of negotiable paper, or to render its circulation more free and unrestricted. The rule announced in Cromwell v. Sac County and other cases upon this question is reviewed by the Supreme Court in Wade v. Chicago, etc., Ry. Co., 149 U. S. 327, 13 Sup. Ct. 892, 37 L. Ed. 755, and restated as follows:

"By the decisive weight of authority in this country, where negotiable paper has been put in circulation, and there is no infirmity or defense between the antecedent parties thereto, a purchaser of such securities is entitled to recover thereon, as against the maker, the whole amount, irrespective of what he may have paid therefor."

This is the extent to which the Supreme Court goes in its latest utterances upon this question. The facts thus stated, which condition the right of such holder to so recover the full amount of the security, are wholly absent in this case; for here the bonds were fraudulently procured from the maker. They created no liability on the part of the district to the original holder thereof; in fact were illegal and fraudulent, as between the original parties; and the district is estopped from denying the recitals of the bonds only as against a purchaser for value, before due, in the ordinary course of business, who has relied upon such recitals in making the purchase. In other words, recovery upon them is permitted upon the grounds of estoppel, rather than the negotiable character of the

instruments; for, in the absence of the recitals of fact in the bonds a purchaser of them would be charged, under the law, with notice of their invalidity. There is a well-recognized distinction between a want or inadequacy of consideration and illegality or fraud in the inception of the paper. In the latter case the equitable rule of protection to the holder is applied, and limits recovery from the maker to that extent. 1 Daniel, Neg. Instruments (4th Ed.) § 758; Dresser v. M. & I. Ry. Co., 93 U. S. 93, 23 L. Ed. 815; Huff v. Wagner, 63 Barb. 230; Stalker v. McDonald, 6 Hill, 93, 40 Am. Dec. 389. In 1 Daniel, above, it is said:

"The bona fide holder of it for value, and without notice, is undoubtedly entitled to be protected against a loss which would befall him if the party defrauded were permitted to set up the defense of fraud on the part of the payee against him, as we have already seen. But it does not, therefore (as has been considered), follow that he may recover of such party the whole amount when he has paid a less sum. For his protection and security against loss it is only necessary that he should be paid back the amount which he was induced to give for the instrument by its appearance of validity, and therefore such amount is the limit of his recovery against the drawer or maker who was defrauded into the execution of the instrument."

In any event, the rule contended for can have no application in the face of a statute such as section 3070 of Code of Iowa (1897). That section is as follows:

"The want or failure, in whole or in part, of the consideration of a written contract may be shown as a defense, total or partial, except to negotiable paper transferred in good faith and for a valuable consideration before maturity, *but if such paper has been procured by fraud upon the maker, no holder thereof shall recover thereon of the maker a greater sum than he paid therefor, with interest and costs.*"

The original of this section is section 2114, Code Iowa 1873. In 1886 it was amended by adding thereto the words in italics. Chapter 90, p. 129, Acts 22d Gen. Assem. Iowa.

In Williams v. Haines, 27 Iowa, 251, 1 Am. Rep. 268, the Supreme Court of Iowa construed this section (before the amendment) as one pertaining to the remedy only. Whether the amendment would apply to or affect a contract for the purchase of such paper before it was enacted need not be determined. This bond is an Iowa contract, made and payable in that state, and suit to enforce its payment must necessarily be brought there. When it was made the law of that state permitted fraud in its inception to be shown to defeat a recovery thereon by the original holder, or by one having notice of such fraud. By the amendment such defense may be shown against any holder who acquired it subsequent thereto for the purpose of determining the amount he may recover thereon. Richards v. Monroe, 85 Iowa, 359, 52 N. W. 339, 39 Am. St. Rep. 301; Wray v. Warner, 111 Iowa, 64, 82 N. W. 455. Complainant's right to recover upon this instrument at all depends upon his contract of purchase thereof from Mrs. Mason. That contract was made subsequent to the enactment of this amendment, and in the light thereof. The bond was evidently regarded, at the time of its purchase, as of little value, and complainant very frankly admits that he purchased it for a mere nominal consideration, so

that he might add the amount thereof to bond No. 46, in order to enable him to bring suit in the courts of the United States. He had the right to do this, but such purchase was not in the usual course of business, was not for a valuable consideration, and it creates no equities in favor of complainant superior to those of these school districts in the amount of this bond above what he paid for the same. To limit the amount of his recovery, under the circumstances of such purchase, to what he paid for the bond can have no possible tendency to limit or restrain the free circulation of negotiable instruments, nor impair in any degree the rights of bona fide holders thereof for value. It is not, therefore, such a transaction as will move a court of equity to add more than $2,200 to the burden of these school districts in order that complainant may have profit to that extent upon an investment of only $50, made just before the commencement of the suit, and when he knew of the fraudulent character of the bond in its inception. Section 3070 of the Code of Iowa is intended to prevent such inequitable results. Its provisions are just, and its application to the facts of this suit will do exact justice between these parties.

The conclusion, therefore, is that complainant is entitled to recover the principal of bond No. 46, with interest thereon according to its terms from the date of its maturity, and the coupon thereon due February 15, 1892, with 6 per cent. interest from that date, and the $50 paid by him for bond No. 43, with 6 per cent. interest from November 1, 1901, the date of his purchase of the same. The clerk will make computation of the amount accordingly, and judgment will be entered in favor of complainant against the Rural Independent school district of Allison for two-thirds of such amount, and against the Rural Independent school district of Jackson for one-third thereof. Costs will be taxed against the defendants in the same proportion.

It is ordered accordingly.